**No. 17-35105**
_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

STATE OF WASHINGTON, et al.,
Plaintiffs-Appellees,

v.

DONALD TRUMP, President of the United States, et al.,
Defendant-Appellants.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
_____

**BRIEF OF *AMICI CURIAE***
**LAW PROFESSORS AND CLINICIANS**
**SUPPORTING PLAINTIFFS-APPELLEES**
_____

FATMA E. MAROUF
Professor of Law
Director, Immigrant Rights Clinic
Texas A&M University School of Law
Telephone: (817) 212-4123
Facsimile: (817) 212-4124
Email: fatma.marouf@law.tamu.edu

# TABLE OF CONTENTS

STATEMENT OF INTEREST…....…………………………………..…...1

INTRODUCTION…………………………………………………………1

ARGUMENT……………………………………………………….........2

    I.    THE EO INFLICTS IRREPARABLE HARM ON
           INTERNATIONAL STUDENTS AND RESEARCHERS…………..2

    II.   PLAINTIFFS-APPELLEES ARE LIKELY TO SUCCEED ON
           THE MERITS………………………………………………...5

           A. The EO Violates Due Process Rights of Nonimmigrants……...6

           B. The EO Violates the Immigration and Nationality Act and
              Administrative Procedure Act…………………………………9

CONCLUSION………………………………………………………...12

## <u>TABLE OF AUTHORITIES</u>

### <u>U.S. Federal Cases</u>

*All. for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011)……………………………………………….6

*Bustamante v. Mukasey*,
    531 F.3d 1059 (9th Cir. 2012)……………………………………………….8

*Chamber of Commerce v. Reich,*
    74 F.3d 1322 (D.C. Cir. 1996)……………………………………………..11

*Coquico, Inc. v. Rodriguez-Miranda*,
    562 F.3d 62 (1st Cir. 2009)………………………………………………….6

*Felkner v. Jackson*,
    562 U.S. 594 (2011)………………………………………………………….8

*Fiallo v. Bell,*
    430 U.S. 787, 807 (1977)…………………………………………………...8

*Franklin v. MA*,
    505 U.S. 788 (1992)………………………………………….……………11

*Kesser v. Cambra*,
    465 F.3d 351 (9th Cir. 2006)……………………………………………….8

*Kerry v. Din*,
    135 S.Ct. 2128 (2015)……………………………………………………….7

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972)……………………………………………………….7-8

*Louhghalam v. Trump,*
    *Civ. 17-10154-NMG* (Feb. 3, 2017) …………………………………...6

*Public Citizen v. United States Trade Representative,*
    5 F.3d 549 (D.C. Cir. 1993)……………………….………………………11

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ………………………………………………6

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)…………………………………………………………6

## Title 8 of United States Code (Immigration and Nationality Act)

8 U.S.C. § 1152(a)(1)(A)……………………………………………...10-11

8 U.S.C. § 1184(a) ……………………………………...…………9, 11

8 U.S.C. § 1201(c)(2) ………………………………………………10

8 U.S.C. § 1201(h) ………………………………………………10

8 U.S.C. § 1201(i) ………………………………………………3

8 U.S.C. § 1227(a)(1)(B) ………………………………………2

8 U.S.C. § 1182(f) ………………………………………………..11

## Title 5 of U.S. Code (Administrative Procedure Act)

5 U.S.C. § 706(2)(A) …………………………………………….……11

5 U.S.C.  § 706(2)(C) …………………………………………………11

5 U.S.C.  § 706(2)(D) …………………………………………………11

## Secondary Sources

Association of Public Land-Grand Universities, Public Universities Respond to
New Immigration Executive Order (including statements from 140 public
universities expressing concerns about the ban),

http://www.aplu.org/members/councils/strategic-communications/immigration-actions/index.html (lasted visited Feb. 5, 2017)……………………………………4

Noah Bierman, Donald Trump's Muslim ban was removed from the Website, but it's back," LOS ANGELES TIMES, Nov. 10, 2016, http://www.latimes.com/nation/politics/trailguide/la-na-updates-trail-guide-so-what-s-the-deal-with-donald-trump-s-1478812963-htmlstory.html (lasted visited Feb. 5, 2017)……………………………………………………………………9

College Factual, *How Trump's Executive Order Affects Thousands of International Students in the U.S.*, Jan. 31, 2017, http://inside.collegefactual.com/blog/how-trumps-travel-ban-affects-thousands-of-international-students (lasted visited Feb. 5, 2017)…………………………………………………………………...4-5

International Higher Education Consulting Blog, Running List of University/College and Higher Education Organization/Association Responses to President Trump's Executive Order Entitled "Protecting the Nation from Terrorist Entry into the United States by Foreign Nationals," Jan. 27. 2017, http://ihec-djc.blogspot.com/2017/01/running-list-of-universitycollege-and.html (last visited Feb. 5, 2017)………………………………………………………………..4

Elisa Labott, *Over 900 US Career diplomats protest Trump Order*, CNN, Jan. 31, 2017, http://www.cnn.com/2017/01/30/politics/career-diplomats-dissent-memo/ (last visited Feb. 5, 2017)…………………………………………………………10

Elizabeth Redden, Boycotting the U.S., Inside Higher Ed (Jan. 31, 2017), https://www.insidehighered.com/news/2017/01/31/protest-trump-entry-ban-some-scholars-are-boycotting-us-based-conferences (last visited Feb. 5, 2017)…………5

Rebecca Savransky, Giuliani: Trump asked me how to do a Muslim ban 'legally', THE HILL, Jan. 28, 2017, http://thehill.com/homenews/administration/316726-giuliani-trump-asked-me-how-to-do-a-muslim-ban-legally (last visited Feb. 5, 2017)…………………………………………………………………………..9

Michael D. Shear, Mark Landler, Matt Apuzzo, and Eric Lichtblau, *Trump Fires Acting Attorney General Who Defies Him*, NEW YORK TIMES, Jan. 30, 2017, https://www.nytimes.com/2017/01/30/us/politics/trump-immigration-ban-memo.html (last visited Feb. 5, 2017)…………………………………………….10

Press Release, Trump-Pence Campaign, Donald J. Trump Statement on Preventing Muslim Immigration, Dec. 7, 2015, https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration (last visited Feb. 5, 2017)…………………………………………………………………..9

U.S. Department of State, letter dated Jan. 27, 2017 (released by U.S. Department of Justice on Jan. 31, 2017), http://www.politico.com/f/?id=00000159-f6bd-d173-a959-ffff671a0001(last visited Feb. 5, 2017)………………………………….2-3

U.S. Department of State, Bureau of Consular Affairs, Important Announcement, Executive Order on Visas, https://travel.state.gov/content/travel/en/news/important-announcement.html (last visited Feb. 5, 2017)………………………………………………………..3

## STATEMENT OF INTEREST

*Amici* are law professors and clinicians at institutions of higher education. *Amici* have personal, professional, and academic connections to students, researchers, faculty, and staff from all over the world. Many *amici* teach law school clinics and have had first-hand experience with international students, faculty, and clients who have sought their direct assistance with immigration issues resulting from the President's recent Executive Order (EO). As law professors and clinicians, we have worked hard in a climate of chaos and confusion to assist international students and faculty detained at airports and stranded abroad after participating in conferences, giving talks, or engaging in research. We have also helped students and faculty navigate concerns about the impact of the revocation of their visas on their studies and employment, including the risk of being placed in removal proceedings. In addition, we have scrambled to assist numerous noncitizens not affiliated with universities who have similarly been affected by the EO. *Amici* submit this brief under Fed. R. App. P. 29, Circuit Rule 29(a)(2). All parties have consented to the submission of amici briefs in this case.

## INTRODUCTION

The Ninth Circuit should deny the motion for an emergency stay of the temporary restraining order (TRO) issued by the U.S. District Court for the Western District of Washington. The EO issued on January 27, 2017 creates a

serious risk of irreparable harm to our clients, students, and colleagues who have nonimmigrant (temporary) visas at United States universities. In addition, Plaintiffs-Appellees are likely to succeed on the merits of their constitutional and statutory claims.

## **ARGUMENT**

## I.  **THE EO INFLICTS IRREPARABLE HARM ON INTERNATIONAL STUDENTS AND RESEARCHERS.**

On January 31, 2017, the U.S. Department of Justice released a State Department notice dated January 27, 2017, "provisionally revok[ing] *all valid nonimmigrant and immigrant visas* of nationals of Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen," subject to narrow exceptions for diplomatic visas and case-by-case determinations made in the national interest.[1] This revocation of visas made everyone with nonimmigrant visas from the seven countries, even those *within* the United States, potentially deportable under 8 U.S.C. § 1227(a)(1)(B), which provides: "Any alien who is present in the United States in violation of this Act or any other law of the United States, *or whose nonimmigrant visa (or other*

---

[1] U.S. Department of State, letter dated Jan. 27, 2017 (released by U.S. Department of Justice on Jan. 31, 2017), http://www.politico.com/f/?id=00000159-f6bd-d173-a959-ffff671a0001.

*documentation authorizing admission into the United States as a nonimmigrant)*

*has been revoked under section 221(i) is deportable*." (Emphasis added).[2]

On or about February 4, 2017, the State Department issued an announcement confirming that it had, "under the Executive Order, provisionally revoked *all valid visas* of nationals of those seven countries, with limited exceptions."[3] (Emphasis added). In light of the TRO issued by the U.S. District Court for the Western District of Washington, however, the State Department lifted the provisional revocation. *Id.*

The nationwide TRO currently protects thousands of international students and researchers in the United States. If the order is reversed, students and researchers will suffer irreparable harm, namely the inability to travel outside the United States and a fear that they may fall out of legal status and suffer deportation. They would be unable to leave the country to attend international symposia or conferences, engage in overseas field research, collaborate with colleagues in other countries, or visit their families without encountering impediments to their return.

---

[2] The State Department invoked its authority under 8 U.S.C. § 1201(i), INA § 221(i), in its letter dated Jan. 27, 2017. *See supra* note 1.
[3] U.S. Department of State, Bureau of Consular Affairs, Important Announcement, Executive Order on Visas,
https://travel.state.gov/content/travel/en/news/important-announcement.html.

According to data collected from the Department of Homeland Security by College Factual, a higher education data analytics and research company, there were 23,763 students with F-1 and M-1 student visas at 596 universities in the United States affected by the travel ban.[4] Since this number only includes students, not faculty, it actually underestimates the true number of individuals who are affected and who may be subjected to deportation if their nonimmigrant visas expired. Post-docs, medical residents, and faculty often work at United States universities with other types of nonimmigrant visas, such as J-1 visas for exchange visitors and H-1 visas for temporary workers.

Students' and researchers' concerns are consistent with those expressed by numerous American universities.[5]  The students and researchers we work with and represent provide critical, diverse viewpoints to university life. Their experiences

[4] College Factual, *How Trump's Executive Order Affects Thousands of International Students in the U.S*., Jan. 31, 2017, http://inside.collegefactual.com/blog/how-trumps-travel-ban-affects-thousands-of-international-students.

[5] *See* Appendix A (list of hundreds of institutions of higher education that have expressed concerns about the EO); Association of Public Land-Grand Universities, Public Universities Respond to New Immigration Executive Order (including statements from 140 public universities expressing concerns about the ban), http://www.aplu.org/members/councils/strategic-communications/immigration-actions/index.html; International Higher Education Consulting Blog, Running List of University/College and Higher Education Organization/Association Responses to President Trump's Executive Order Entitled "Protecting the Nation from Terrorist Entry into the United States by Foreign Nationals," Jan. 27. 2017, http://ihec-djc.blogspot.com/2017/01/running-list-of-universitycollege-and.html.

and perspectives enrich our understanding of new problems to be solved, and help identify original solutions to those problems.

Shortly after the EO was announced, over 3,000 international scholars signed a petition to "boycott international academic conferences held in the United States in solidarity with those affected by" the EO.[6] Not only does this suppress intellectual activity and collaboration, but it also inflicts substantial financial harm. Furthermore, if international students from the seven banned countries are no longer able to attend school in the U.S., either because they are denied entry to the country or their visas expire, our universities stand to lose hundreds of millions of dollars.[7] These financial losses, which would affect our programs, including our law school clinics, could be even greater if the ban also discourages students who are citizens of other Muslim-majority countries from studying in the United States.

## II.  PLAINTIFFS-APPELLEES ARE LIKELY TO SUCCEED ON THE MERITS

Unlike the First Circuit, the Ninth Circuit has never placed special emphasis on the "likelihood of success" factor, resulting in a different legal standard here than was applied in the Massachusetts case.  *See* Exh. B to Emergency Motion for Stay (*Louhghalam v. Trump*, Civ. 17-10154-NMG, Order at 20 (Feb. 3, 2017))

---

[6] Elizabeth Redden, Boycotting the U.S., Inside Higher Ed (Jan. 31, 2017), https://www.insidehighered.com/news/2017/01/31/protest-trump-entry-ban-some-scholars-are-boycotting-us-based-conferences.

[7] *See* College Factual, *supra* note 4 (estimating that revocation of student visas at 596 schools would result in losses of $700 million).

(citing *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009) (holding that the likelihood of success factor weighs most heavily in the decision). Here, the District Court judge correctly relied on Ninth Circuit precedents that consider all four factors using a sliding scale. *See All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1134-35 (9th Cir. 2011); *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008)).

### A. The EO Violates Due Process Rights of Nonimmigrants

Nonimmigrants who have been *granted visas* and are *already living* in the United States have due process rights to stay here; those who are abroad have a due process interest in proper adjudication of their rights to be in the United States. U.S. Const. amend. V. The EO affects not only nonimmigrants who are seeking entry for the first time, but also those who have established ties to the United States, including students and faculty who we have assisted in the past weeks as they grapple with the EO's impact. The EO inflicted irreparable harm on nonimmigrants within the United States who suddenly lost their ability to travel, had their visas revoked, and thereby feared deportation. Many of these students and faculty members have already been in the United States for years, are in the middle of degree programs, and have made significant intellectual contributions to the United States. They should receive due process protections commensurate with

their substantial ties to the United States. This Court need not determine the precise contours of the process due to nonimmigrants living in the United States (or those abroad) in deciding this appeal. It need only find a likelihood of success in showing that the process received by these nonimmigrants – which involved no notice, no opportunity to respond, and no individualized analysis of risk to national security – was insufficient.

Even if the Court applies the "facially legitimate and bona fide" standard that has been applied to individuals seeking admission, the EO fails to satisfy that test. While national security may, in some cases, be a facially legitimate reason, it is not legitimate when applied without any individualized analysis to entire nations. *Cf. Kleindienst v. Mandel,* 408 U.S. 753, 769 (1982) (finding a "facially legitimate and bona fide" reason for the denial of visa to an individual who had violated the conditions of his visa on two prior trips); *Kerry v. Din,* 135 S.Ct. 2128, 2140 (2015) (finding a "facially legitimate and bone fide" reason for the denial of a visa to an Afghan national who had previously been employed by the Taliban). Neither the Supreme Court nor the Ninth Circuit has ever held that national origin, religion, or race alone constitutes a "facially legitimate and bona fide reason." The overbreadth of the EO reflects the type of "unfettered discretion" that the Supreme Court has explicitly rejected. *See Kleindienst,* 408 U.S. at 762; *Fiallo v. Bell,* 430 U.S. 787, 807 (1977).

7

Furthermore, even if national security provides a facially legitimate reason for the EO, it is not a bona fide reason for the ban on all individuals from seven Muslim-majority countries. As previously recognized by this Court, the "facially legitimate" and "bona fide" prongs of the test are distinct. *See Bustamante v. Mukasey,* 531 F.3d 1059, 1062-1063 (9th Cir. 2012) (examining the "bona fide" prong separately). The "bona fide" part of the test requires a court to distinguish between good faith reasons and pretextual excuses. In other contexts, appellate courts have given great deference to trial courts' determinations of whether the government's explanation is bona fide. *See Kesser v. Cambra,* 465 F.3d 351, 356 (9th Cir. 2006) (noting that the court of appeal gave "great deference to the trial court in distinguishing bona fide reasons from sham excuses"); *Felkner v. Jackson*, 562 U.S. 594, 596 (2011) (same).

Here, there is substantial evidence that the ban was motivated by animus against Muslims. For example, on January 28, 2017, a week after the inauguration, Former New York City Mayor Rudy Giuliani stated in an interview that President Trump had previously asked him about legally implementing a "Muslim ban."[8] Indeed, for nearly a year preceding the election, President Trump's campaign

---

[8]Rebecca Savransky, Giuliani: Trump asked me how to do a Muslim ban 'legally', THE HILL, Jan. 28, 2017, http://thehill.com/homenews/administration/316726-giuliani-trump-asked-me-how-to-do-a-muslim-ban-legally.

website referred to a "Muslim ban," indicating discriminatory intent.[9] The evidence that there was no bona fide reason for the ban will be developed further through discovery. In the interim, however, the TRO should remain in place to prevent irreparable harm to nonimmigrants.

### B. The EO Violates the Immigration and Nationality Act and the Administrative Procedure Act

The INA provides the procedure due to arriving nonimmigrants with valid nonimmigrant visas. The EO violates those procedures in three ways. First, the statute requires that the procedure for admission be set through regulation. 8 U.S.C. § 1184(a) ("The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe[.]"). The EO was not promulgated as a regulation. It never went through the public notice and comment procedures that help ensure transparent, deliberate, well-reasoned policies under § 553 of the Administrative Procedure Act (APA). In fact, the EO was never even vetted by key agency officials or career diplomats with relevant expertise, hundreds of whom

---

[9]Noah Bierman, Donald Trump's Muslim ban was removed from the Website, but it's back," LOS ANGELES TIMES, Nov. 10, 2016, http://www.latimes.com/nation/politics/trailguide/la-na-updates-trail-guide-so-what-s-the-deal-with-donald-trump-s-1478812963-htmlstory.html; *see also* Press Release, Trump-Pence Campaign, Donald J. Trump Statement on Preventing Muslim Immigration, Dec. 7, 2015, https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration.

have since explicitly voiced their opposition to the EO, including the former

Acting Attorney General, Sally Yates, who refused to defend the ban.[10] The failure

to use a transparent process also contributed to the chaos and confusion that ensued

after the EO was suddenly issued.

Second, the statute requires that a nonimmigrant visa "shall be valid for the

period the regulations proscribe." *Id.* § 1201(c)(2). However, the EO effectively

invalidated the visas for travel purposes. Third, the INA denies admission to

nonimmigrants only when they are inadmissible under the INA or "any other

provision of law." 8 U.S.C. § 1201(h). The EO denies admission to all visa holders

from the seven countries regardless of admissibility.

In addition, with respect to immigrant visas, the INA prohibits

discrimination in admissions based on nationality. 8 U.S.C. § 1152(a)(1)(A).

Congress enacted the nondiscriminatory provision *after* 8 U.S.C. § 1182(f), which

authorizes the President to "suspend the entry of all aliens or any class of aliens as

immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he

may deem to be appropriate." The provision allowing suspension of entry of

---

[10] *See* Elisa Labott, *Over 900 US Career diplomats protest Trump Order*, CNN, Jan. 31, 2017, http://www.cnn.com/2017/01/30/politics/career-diplomats-dissent-memo/; Michael D. Shear, Mark Landler, Matt Apuzzo, and Eric Lichtblau, *Trump Fires Acting Attorney General Who Defies Him*, NEW YORK TIMES, Jan. 30, 2017, https://www.nytimes.com/2017/01/30/us/politics/trump-immigration-ban-memo.html.

classes of aliens is therefore subject to the nondiscrimination requirement in 8

U.S.C. § 1152(a)(1)(A). Furthermore, the President's authority under 8 U.S.C. §

1182(f) should not be interpreted to undermine the requirement that the procedures

for nonimmigrant admission be set through regulation. 8 U.S.C. § 1184(a).

By violating the plain language of the INA, the EO is also arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law, in

violation of APA § 706(2)(A); in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right, in violation of APA § 706(2)(C); and

without observance of procedure required by law, in violation of § 706(2)(D).

Although the President is not an "agency" under the APA, *Franklin v. MA,*

505 U.S. 788, 797 (1992), an agency's implementation of presidential directives

must still conform to the APA. *See, e.g., Chamber of Commerce v. Reich,* 74 F.3d

1322, 1327 (D.C. Cir. 1996) ("that the Secretary's regulations are based on the

President's Executive Order hardly seems to insulate them from judicial review

under the APA, even if the validity of the Order were thereby drawn into

question.); *Public Citizen v. United States Trade Representative,* 5 F.3d 549, 552

(D.C. Cir. 1993) (noting that the denial of judicial review over presidential actions

"is limited to those cases in which the President has constitutional or statutory

responsibility for the *final step* necessary for the agency action directly to affect the

parties).  Where, as here, immigration decisions require action by administrative

officials, courts routinely apply the APA and administrative law doctrines.

## **CONCLUSION**

In order to protect the constitutional and statutory rights of nonimmigrants and prevent irreparable harm to our colleagues and clients -- students and faculty with nonimmigrant visas -- the Court should deny the motion to stay or vacate the TRO issued by the U.S. District Court for the Western District of Washington. The TRO should remain in place as parties conduct discovery and the trial court holds an evidentiary hearing.

DATED: February 5, 2017       Respectfully submitted,

By: /s Fatma Marouf

Fatma E. Marouf, Esq.
Professor of Law
Director of the Immigrant Rights Clinic
Texas A&M University School of Law
Telephone: (817) 212-4123
Facsimile: (817) 212-4124
Email: fatma.marouf@law.tamu.edu

*All affiliations listed for identification purposes only.*

Nancy Abramowitz, American University Washington College of Law

Kathryn Abrams, Berkeley Law

John Acevedo, University of La Verne College of Law

Cynthia Adams, Indiana University McKinney School of Law

Deborah Ahrens, Seattle University School of Law

Raquel Aldana, McGeorge School of Law

Arléne Amarante, University of Nevada, Las Vegas School of Law

Farrin Anello, Seton Hall University School of Law

Deborah Anker, Harvard Immigration and Refugee Clinical Program,
Harvard Law School

Susan Appleton, Washington University School of Law

Sabrineh Ardalan, Harvard Immigration and Refugee Clinical Program

Kif Augustine-Adams, J. Reuben Clark Law School, Brigham Young University

Sahar Aziz, Texas A&M University School of Law

Sabrina Balgamwalla, University of North Dakota School of Law

David Baluarte, Washington and Lee University School of Law

Caitlin Barry, Villanova University Charles Widger School of Law

Marsha Baum, University of New Mexico School of Law

Jennifer Baum, St. Vincent de Paul Legal Program, St. John's University School of
Law, Child Advocacy Clinic

Galya Ben-Arieh Ruffer, Northwestern University, Center for Forced Migration
Studies

Emily Benfer, Loyola University Chicago School of Law

Susan Bennett, American University Washington College of Law

Lenni Benson, New York Law School

Jacqueline Bhabha, Harvard University

W. Warren H. Binford, Willamette University College of Law

Kaci Bishop, The University of North Carolina School of Law

Blaine Bookey, UC Hastings Center for Gender & Refugee Studies

Cynthia Bowman, Cornell Law School

Shawn Marie Boyne, Indiana University Robert H. McKinney School of Law

Susan  Brooks, Drexel University Kline School of Law

Melissa Brown, Pacific McGeorge School of Law

Margaret Burnham, Northeastern University School of Law

Charles Calleros, Arizona State University College of Law

Kristina Campbell, Univ. of District of Columbia David A. Clarke School of Law

Nancy Cantalupo, Barry University School of Law

Lauren Carasik, Western New England University School of Law

Elizabeth Carroll, USC Gould School of Law

Benjamin Casper Sanchez, University of Minnesota Law School, Center for New Americans

Linus Chan, University of Minnesota Law School

Kim D. Chanbonpin, The John Marshall Law School

Marguerite Chapman, University of Tulsa College of Law (Professor Emerita)

Matthew Charity, Western New England University School of Law

Carol Chomsky, University of Minnesota Law School

Eric Christiansen, Golden Gate University School of Law

Janie Chuang, American University Washington College of Law

Beth Cohen, Western New England University School of Law

Donna  Coker, University of Miami School of Law

Ruth Colker, Ohio State University Moritz College of Law

Holly Cooper, UC Davis School of Law Immigration Law Clinic

Avidan Cover, Case Western Reserve University School of Law

Rachel Croskery-Roberts, University of California - Irvine School of Law

Rose Cuison-Villazor, UC Davis School of Law

Alina Das, New York University School of Law Immigrant Rights Clinic

Julie Davies, University of the Pacific, McGeorge School of Law

Angela Davis, American University Washington College of Law

Amy Dillard, University of Baltimore School of Law

Victoria Dodd, Suffolk University Law School

Jennifer Drobac, Indiana University Robert H. McKinney School of Law

Moira Duvernay, UC Hastings Center for Gender & Refugee Studies

Maurice Dyson, Thomas Jefferson School of Law

Pamela Edwards, CUNY School of Law

Nancy Ehrenreich, University of Denver Sturm College of Law

Floralynn Einesman, California Western School of Law

Kathleen Engel-Rebitzer, Suffolk University Law School

Kate Evans, University of Idaho College of Law

Jessica Feinberg, Mercer Law School

Zanita Fenton, University Miami School of Law

Paul Finkelman, University of Pittsburgh  School of Law

Angelina Fisher, NYU School of Law

Barbara Flagg, Washington University Law

Laurel Fletcher, Berkeley Law

Taylor Flynn, Western New England School of Law

Caroline Forell, University of Oregon Law

Jacqueline Fox, University of South Carolina School of Law

Eric Franklin, William S.Boyd School of Law, UNLV

Ann Freedman, Rutgers Law School

Niels Frenzen, University of Southern California Gould School of Law

Maryellen Fullerton, Brooklyn Law School

Paula Galowitz, New York University School of Law

Susan Gary, University of Oregon School of Law

Lauren Gilbert, St. Thomas University School of Law

Jason Gillmer, Gonzaga School of Law

Denise Gilman, University of Texas School of Law Immigration Clinic

Barbara Glesner Fines, University of Missouri Kansas City School of Law

Phyllis Goldfarb, George Washington University Law School

Ezra Goldschlager, University of La Verne College of Law

Naomi Goodno, Pepperdine University School of Law

Joanne Gottesman, Rutgers Law School

Tiffany Graham, University of South Dakota School of Law

Ariela Gross, University of Southern California, Gould School of Law

Aya Gruber, University of Colorado Law School

Anju Gupta, Rutgers Law School Immigrant Rights Clinic

Egon Guttman, American University, Washington College of Law

Gillian Hadfield, University of Southern California, Gould School of Law

Rebecca Hamilton, American University, Washington College of Law

Gail Hammer, Gonzaga University School of Law, University Legal Assistance

Anna Han, Santa Clara Law School

Jean Han, American University, Washington College of Law

Jacqueline Hand, University of Detroit Mercy Law School

Lindsay Harris, University of D.C. - David A. Clarke School of Law

Keith M. Harrison, Savannah Law School

Danielle Hart, Southwestern Law School

Bruce Hay, Harvard Law School

Dina Haynes, New England Law|Boston

Geoffrey Heeren, Valparaiso University Law School

Jennifer Hendricks, University of Colorado

Laura A. Hernandez, Baylor Law School

Kathy Hessler, Lewis & Clark Law School

Richard Hildreth, University of Oregon Law

Bill Hing, Univ. of San Francisco Immigration and Deportation Defense Clinic

Cynthia Ho, Loyola University of Chicago School of Law

Sharona Hoffman, Case Western Reserve University School of Law

Brooks Holland, Gonzaga University School of Law

Mary Holper, Boston College Immigration Clinic

Kari Hong, Boston College Law School, Ninth Circuit Appellate Program

C. Quince Hopkins, Florida Coastal School of Law

Emily Houh, University of Cincinnati College of Law

Alan Hyde, Rutgers Law School

Lisa Ikemoto, University of California, Davis School of Law

Erin Jacobsen, Vermont Law School

Sam Jacobson, Willamette University College of Law

Regina Jefferies, University of Minnesota Law School

Jamila Jefferson-Jones, University of Missouri - Kansas City

Dalie Jimenez, University of Connecticut School of Law

Paula Johnson, Syracuse University College of Law

José (Beto) Juárez, University of Denver Sturm College of Law

Doron Kalir, Civil Litigation Clinic, Cleveland Marshall College of Law

Mary Kate Kearney, Widener Commonwealth Law School

Christine Kellett, Dickinson Law/Penn State

Kathryn Kelly, The Catholic University of America

Laura Kessler, University of Utah, S.J. Quinney College of Law

Elizabeth Keyes, University of Baltimore School of Law

Kathleen Kim, Loyola Law School

Catherine Kim, University of North Carolina School of Law

Andrew Kim, Syracuse University College of Law

Diane Klein, University of La Verne College of Law

Eunice Lee, UC Hastings Center for Gender & Refugee Studies

Jennifer Lee Koh, Western State College of Law

Daniel M. Kowalski, Bender's Immigration Bulletin (LexisNexis)

Annie Lai, UC Irvine School of Law

Prerna Lal, East Bay Community Law Center, Berkeley Law

Laurie  Leader Chicago-Kent College of Law, IIT

Terri LeClercq, School of Law, Univeristy of Texas

Evelyn Lewis, UCD Law

Joellen Lind, Valparaiso University Law School

Jeffrey Lubbers, American University, Washington College of Law

Beth Lyon, Cornell Law School

Elizabeth MacDowell, William S.Boyd School of Law, UNLV

Luis Mancheno, Kathryn O. Greenberg Immigration Justice Clinic at the Benjamin

N. Cardozo School of Law

Randi Mandelbaum, Rutgers Law School

Susan Mandiberg, Lewis & Clark Law School

Genevieve Mann, Gonzaga University School of Law

Lynn Marcus, Immigration Law Clinic, University of Arizona James E. Rogers

College of Law

Jennifer Martin, St. Thomas University School of Law

Elena Marty-Nelson, NSU College of Law

Julie Marzouk, Chapman University, Fowler School of Law

Dayna Matthew, University of Colorado School of Law

Elizabeth McCormick, University of Tulsa College of Law

Kris McDaniek-Miccio, University of Denver Sturm College of Law

Janis McDonald, Professor of Law & Co-Director Cold Case Justice Initiative

Amelia McGowan, Catholic Charities of Jackson, Mississippi

Brian McGowan, Grambling State University

Karla McKanders, University of Tennessee, College of Law

Fiona McKenna, Golden Gate University School of Law

Michelle McKinley, University of Oregon School of Law

Mary Brigid McManamon, Delaware Law School

Judith McMorrow, Boston College Law School

Stephen Meili, University of Minnesota Law School

Chi Mgbako, Fordham University School of Law

Binny Miller, American University, Washington College of Law

Elliott  Milstein, American University Washington College of Law

Sherizaan Minwalla, American University, Washington College of Law

Behzad Mirhashem, UNH School of Law

Jennifer Moore, University of New Mexico School of Law

Nancy Morawetz, NYU School of Law

Kathleen Morris, Golden Gate Law School

Mary-Beth Moylan, University of the Pacific, McGeorge School of Law

Professor Ann Murphy, Gonzaga University School of Law

Yxta Maya, Murray Loyola Law School

Karen Musalo, UC Hastings Center for Gender & Refugee Studies

Natalie Nanasi, SMU Dedman School of Law

Jason Neidleman, University of La Verne

Nise Nekheba, Florida A&M University College Of Law

Lori Nessel, Seton Hall University School of Law

Xuan-Thao Nguyen, Indiana University McKinney School of Law

Fionnuala Ni Aolain, University of Minnesota, Human Rights Center

Blake Nordahl, McGeorge Law School Immigration Law Clinic

Tracy Norton, Touro College Jacob F. Fuchsberg School of Law

Kenneth Nunn, University of Florida College of Law

Udoka Nwanna Southwestern Law School

Mariela Olivares, Howard University School of Law

Michael A. Olivas, University of Houston Law Center

Laura Oren, University of Houston Law Center

Maria Pabon, Loyola New Orleans College of Law

Victoria Palacios, SMU Dedman Law School

Sunita Patel, American University Washington College of Law

Carole Petersen, William S. Richardson School of Law

Huyen Pham, Texas A&M University School of Law

Teresa Phelps, American University Washington College of Law

Karen Pita Loor, Boston University Law School

Nancy Polikoff, American University Washington College of Law

Andrew Pollis, Case Western Reserve University School of Law

Deborah Post, Touro Law Center

Ana Pottratz Acosta, Mitchell Hamline School of Law

Cynthia Prado-Guyer, University of Southern California

Lynne Rambo Texas A&M University School of Law

Jaya Ramji-Nogales, Temple University Beasley School of Law

Andrea Ramos Southwestern Law School Immigration Law Clinic

Vernellia Randall, The University of Dayton School of Law

Renee Redman, University of Connecticut School of LAw

Nikki Reisch, NYU School of Law

Paula R. Rhodes, University of Denver Sturm College of Law

Ira Robbins, American University Washington College of Law

Kalyani Robbins, FIU College of Law

Jenny Roberts, American University, Washington College of Law

Cassandra Burke Robertson, Case Western Reserve Univ. School of Law

Eloisa Rodriguez-Dod, FIU College of Law

Sarah Rogerson, Albany Law School

Michael Rooke-Ley, Nova Southeastern University College of Law

Leslie Rose, Golden Gate University School of Law

Rand Rosenblatt, Rutgers University Law School

Florence Rousman, Indiana U. Robert H. McKinney School of Law

Judith Royster, University of Tulsa College of Law

Rubén G. Rumbaut, University of California, Irvine

Kevin Ruser, University of Nebraska College of Law

Margaret Russell, Santa Clara University

C. Mario Russell, Catholic Charities NY, St. John's Law School

Emily Ryo, USC Gould School of Law

Jendayi Saada, Unversity of La Verne College of Law

Laura Sager, New York University School of Law

Richard Sander, UCLA School of Law

Margaret Satterthwaite, NYU School of Law

Irene Scharf, Univ of Massachusetts School of Law

Erica Schommer, St. Mary's University School of Law

Sean Scott, Loyola Law School

Kim Thuy Seelinger, Human Rights Center, University of California, Berkeley

Rachel Settlage, Wayne State Law School

Sudha Setty, Western New England University School of Law

Ragini Shah, Suffolk University

Rebecca Sharpless, University of Miami School of Law

Anette Sikka, University of Illinois Springfield

Marjorie Silver, Touro Law Center

Anita Sinha, American University Washington College of Law

Matiangai Sirleaf, University of Pittsburgh Law School

Gwynne Skinner, Willamette University College of Law

Catherine Smith, University of Denver Sturm College of Law

William Snape, American University, Washington college of law

Gemma Solimene, Fordham University School of Law

Mary Spector, SMU Dedman School of Law

Jane Spinak, Columbia Law School

Elissa Steglich, University of Texas School of Law, Immigration Clinic

Nomi Stolzenberg, University of Southern California Law School

Christopher Strawn, Immigration Law Clinic, Univ. of Washington School of Law

Jayashri Srikantiah, Stanford Law School Immigrants' Rights Clinic

S.I., Strong University of Missouri

Ellen Suni, UMKC School of Law

Maureen Sweeney, University of Maryland Carey School of Law

Chantal Thomas, Cornell University Law School

Claire Thomas, Safe Passage Project Immigration Clinic at New York Law School

Michael Tigar, Washington College of Law

Karen Tokarz, Washington University Civil Rights & Community Justice Clinic

Mary Pat Treuthart, Gonzaga University School of Law

Enid Trucios-Haynes, Brandeis School of Law, University of Louisville

Tracy Turner, Southwestern Law School

Diane Uchimiya, Justice and Immigration Clinic, Univ. of La Verne College of Law

Gloria Valencia-Weber, University of New Mexico School of Law

Rachel Van Cleave, Golden Gate University School of Law

Anthony Varona, American University Washington College of Law

Lea B. Vaughn, University of Washington School of Law

Kyle Velte, Texas Tech University School of Law

Leti Volpp, Berkeley Law

Julie Waterstone, Southwestern Law School

Susan C. Wawrose, University of Dayton School of Law

Jonathan Weinberg, Wayne State University

Marley Weiss, University of Maryland Carey School of Law

Marley Weiss, University of Maryland Carey School of Law

Deborah Weissman, University of North Carolina

Anna Welch, University of Maine School of Law

Verna Williams, University of Cincinnati College of Law

Wendy Williams, Georgetown Law

Abby Wood, University of Southern California Gould School of Law

Barbara Woodhouse, Emory Law School

Karen Woody, Indiana University, Kelley School of Business

Marcia Zug, University of South Carolina

## CERTIFICATION OF COMPLIANCE

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)(a) and (a)(6) because it has been prepared in a proportionally spaced typeface, using Microsoft Word  in Times New Roman 14-point font.

This brief complies with the type-volume limitations of Fed. R. App. P. 29(d) because it contains 2,577 words excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  (The maximum number of words is 2,600 for an *amicus* brief in connection with a motion, which has a word limit of 5,200 words under Fed. R. App. P. 27(d)(2)(A)).

Dated:  February 5, 2017                    /s/ Fatma E. Marouf
                                            _____
                                            Fatma E. Marouf
                                            Professor of Law
                                            Director of the Immigrant Rights Clinic
                                            Texas A&M University School of Law
                                            Telephone: (817) 212-4123
                                            Facsimile: (817) 212-4124
                                            Email: fatma.marouf@law.tamu.edu

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2017, I electronically filed the foregoing with the Clerk of the court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: February 5, 2017   Respectfully submitted,

/s/ Fatma E. Marouf

_____

Fatma E. Marouf
Professor of Law
Director of the Immigrant Rights Clinic
Texas A&M University School of Law
Telephone: (817) 212-4123
Facsimile: (817) 212-4124
Email: fatma.marouf@law.tamu.edu