No. 17-35105

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF WASHINGTON; STATE OF MINNESOTA,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, President of the United States, et al.,
*Defendants-Appellants*.

Appeal from the United States District Court
Western District of Washington, Seattle
D.C. No. 2:17-cv-00141-JLR

**BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION AND ACLU OF WASHINGTON AS *AMICI CURIAE* IN OPPOSITION TO APPELLANTS' MOTION FOR A STAY**

Emily Chiang, WSBA No. 50517
ACLU OF WASHINGTON
FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184
echiang@aclu-wa.org

Daniel Mach
Heather L. Weaver
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 675-2330
*Attorneys for Amici (Additional Counsel on Subsequent Page)*

Lee Gelernt
Omar Jadwat
Andre Segura
Spencer Amdur
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Immigrants' Rights Project
125 Broad Street
New York, NY 10004
(212) 549-2500

Cecillia Wang
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770

Paul J. Lawrence, WSBA No. 13557
Kymberly K. Evanson,
WSBA No. 39973
Alanna E. Peterson,
WSBA No. 46502
PACIFICA LAW GROUP LLP
1191 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 245-1700

# **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 29(a)(4)(A) of the Federal Rules of Appellate Procedure, the American Civil Liberties Union Foundation and ACLU of Washington Foundation make the following disclosures:

1.) For non-governmental corporate parties please list all parent corporations: None

2.) For non-governmental corporate parties please list all publicly held companies that hold 10% of more of the party's stock: None

Dated: February 6, 2017                    Respectfully Submitted,

/s/ Emily Chiang
Emily Chiang, WSBA No. 50517
ACLU of Washington Foundation
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184
echiang@aclu-wa.org

*Counsel for Amici*

## INTRODUCTION AND INTEREST OF *AMICI*

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization dedicated to the principles of liberty and equality embodied in the Constitution and this Nation's civil rights laws. The ACLU was founded in 1920, largely in response to the curtailment of liberties that accompanied America's entry into World War I. In the intervening nine decades, the ACLU has frequently appeared before this and other courts during periods when the government has sought to abridge rights in the name of national security.

The American Civil Liberties Union of Washington ("ACLU-WA") is a statewide, nonpartisan, nonprofit organization of over 50,000 members carrying out the ACLU's mission in the State of Washington. Like the national ACLU and other affiliates across the country, ACLU-WA has become a focal point to which many people harmed by the Executive Order have turned. *Amici* respectfully submit this brief in opposition to the government's motion for a stay pending appeal.[1]

---

[1] All parties have consented to the filing of this brief. *Amici* affirm that no counsel for any party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *Amici* or their counsel made a monetary contribution to its preparation or submission.

The United States Constitution forbids the government from discriminating on the basis of religion. And yet, on January 27, 2017, President Donald J. Trump issued an Executive Order that, *inter alia*, banned from entering the United States all individuals from seven Muslim-majority countries—Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen—and gave preference to the processing of non-Muslim refugees over Muslim refugees from around the world. The Order is motivated by bias against Muslims, as confirmed by the President's own public statements, as well as the absence of any rational justification for the categorical exclusion of individuals from the seven identified nations or the complete ban on refugees from around the world. The religious discrimination involved in the Executive Order is inconsistent with the bedrock Establishment Clause and equal protection principle that the government should never favor one religion over another.

The District Court properly granted a Temporary Restraining Order, putting a hold on the Executive Order until it can be more fully evaluated by the court. The government seeks to stay the Temporary Restraining Order and to reinstate the discriminatory and unlawful Executive Order. It invokes the doctrine of "plenary power" over immigration matters, arguing that this Court ought not engage in any real examination of the legality of this Order.

But the plenary power doctrine does not permit the government to override all constitutional rights and has never been applied to approve discrimination striking at the very core of the value of religious equality so central to this Nation's founding.

The Order profoundly, directly, and irreparably harms people throughout the United States, destabilizing the lives of thousands of individuals and their families—including those seeking to live, find refuge, visit, study, or work in the State of Washington. Under the Order, U.S. citizens and legal permanent residents are unable to maintain their relationships with their families when their family members are denied entry at our borders. Those fleeing persecution cannot find a safe harbor here.. And workers and students with valid visas will lose their right to live, work, and study here if they travel abroad.

In light of the substantial and widespread injuries at stake—to citizens and noncitizens alike—*Amici* respectfully urge the Court to deny the government's motion for a stay of the Temporary Restraining Order, and to leave in place this critical protection from further irreparable harm.

# ARGUMENT

## A. The Government's Invocation Of The "Plenary Power" Doctrine Is Flawed.

The United States invokes the plenary power doctrine to argue that the Order's religious classifications should be subject to essentially no judicial scrutiny. *See* Appellant's Br. 12-13, 16. But the Supreme Court's recent immigration decisions have taken a far more measured approach to the plenary power doctrine than the government urges: the Court has repeatedly refused to insulate federal immigration statutes from meaningful constitutional review. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001) (rejecting government's reliance on the plenary power doctrine, explaining that the government's immigration "power is subject to important constitutional limitations"); *INS v. St. Cyr*, 533 U.S. 289, 304 (2001) (construing provision of immigration statute to avoid Suspension Clause concerns); *INS v. Chadha*, 462 U.S. 919, 940-41 (1983) (invalidating the legislative veto, stating that despite "[t]he plenary authority of Congress over aliens," courts must inquire into "whether Congress has chosen a constitutionally permissible means of implementing that power"); *Landon v. Plasencia*, 459 U.S. 21, 32-35, 37 (1982) (holding that exclusion procedures for lawful permanent residents returning from brief trips abroad must comply with the Due Process Clause); *see also Boumediene v. Bush*, 553

U.S. 723, 771 (2008) (holding that statute applicable to noncitizens detained at Guantánamo Bay was unconstitutional, stating that "Congress must act in accordance with the requirements of the Suspension Clause"). In short, the government's immigration powers are "subject to judicial intervention under the paramount law of the [C]onstitution." *Carlson v. Landon*, 342 U.S. 524, 537 (1952) (internal quotation marks omitted).

In any event, the Supreme Court has *never* applied the plenary power doctrine to insulate from meaningful scrutiny an immigration classification that discriminates on the basis of religion in the manner that the Executive Order does here. The government can point to no legal or historical precedents to support the insulation of such discrimination from review. The Court therefore should not deviate in this case from "the clearest command of the Establishment Clause," which is "that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). Now is not the point in our Nation's history to begin placing judicial imprimatur on religious discrimination.

### B. The Order's Discrimination On The Basis of Religion Irreparably Harms Members Of Our Communities.

Since the President issued the Executive Order on January 27, its effects have reverberated across the entire country, including in Washington. Hundreds of individuals have contacted the ACLU, ACLU-WA, and other

5

ACLU state affiliates to report problems or seek advice on how best to protect themselves, their families, and their loved ones from the Order. Across the country, individuals feel uncertain about the future and question the stability of their employment, education, and right to travel freely. It is in the public interest to maintain interim injunctive relief to prevent substantial and ongoing nationwide harm. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (courts consider the public interest in determining whether to issue interim injunctive relief).

The individuals reaching out to the ACLU reflect the impact the Order has on people in Washington and throughout the Nation. The Order visits harm, among many others, against the following categories of people:

**U.S. citizens with family or loved ones abroad**. The Order impedes the ability of U.S. citizens to have friends and family from the seven affected countries visit or live with them, whether as immigrants or under tourist, work, or student visas. *Amici* have received many such reports and requests for help from citizens, including one report of a citizen who had waited two years for the issuance of visas for her husband and step-daughter, only to have their reunification blocked by the Order.

**Legal permanent residents with family or loved ones abroad**. The ban similarly obstructs the ability of legal permanent residents to have their

6

family or loved ones visit or join them in Washington and other places throughout the country. Many lawful permanent residents also fear leaving the country themselves, because the government's many policy changes toward them during the past week have created an atmosphere of uncertainty and chaos. One permanent resident who contacted *Amici*, for example, feared visiting her elderly grandparents abroad. Her mother would also be unable to proceed with a planned visit here in the United States.

**Individuals with refugee family members or friends fleeing persecution and conflict.** The blanket ban on all refugees for 120 days, and on refugees from Syria indefinitely, exposes many refugees abroad to extreme danger. Those who are set to be admitted to the United States have already been extensively vetted, and many live in countries where their lives are at risk on a daily basis. For them, the Executive Order is literally a matter of life or death. Many of these refugees have family members or friends in the United States who are likewise harmed by the Order. A Syrian refugee family living in the United States, for example, contacted *Amici* to seek help for their son, daughter, and son-in-law, who had obtained the necessary approval to join the family in this country but were barred because of the Order. They are from Aleppo, Syria, and their daughter is pregnant.

7

**Refugees residing in Washington who wish to reconnect with their families abroad.** The ban also impedes the rights of refugees residing in Washington and other areas of the country to either have their families join them or to travel abroad to reconnect with their families. An Iraqi refugee, for example, contacted *Amici* because she has not seen her fiancée since she resettled in Washington two years ago, but now is afraid that if she leaves the country to visit him she will not be allowed to return.

For each of these stories, there are no doubt many other families being torn apart by the Order. The ban prevents student visa-holders from traveling abroad for study, travel, or to see their families. It restricts the ability of individuals working in the United States pursuant to employment-based visas to travel as needed for their work. This has a profound effect on Washington companies in particular, which employ a significant number of skilled workers under employment-based visas in positions that require international travel. While purporting to advance national security, the ban is discriminatory and lacks a rational connection to national security, resulting in needless and irreparable harm to countless individuals living and working in this country.

8

## CONCLUSION

*Amici* respectfully request that the Court deny the government's motion for a stay of the Temporary Restraining Order.

February 6, 2017.

Respectfully submitted,

/s/ Emily Chiang
Emily Chiang, WSBA No. 50517
ACLU OF WASHINGTON
FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184
echiang@aclu-wa.org

Lee Gelernt
Omar Jadwat
Andre Segura
Spencer Amdur
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
Immigrants' Rights Project
125 Broad Street
New York, NY 10004
(212) 549-2500

Cecillia Wang
Cody Wofsy
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770

9

          Daniel Mach
          Heather L. Weaver
          AMERICAN CIVIL LIBERTIES
          UNION FOUNDATION
          915 15th Street NW
          Washington, DC 20005
          (202) 675-2330

          Paul J. Lawrence,
          WSBA No. 13557
          Kymberly K. Evanson,
          WSBA No. 39973
          Alanna E. Peterson,
          WSBA No. 46502
          PACIFICA LAW GROUP LLP
          1191 Second Avenue, Suite 2000
          Seattle, WA 98101
          (206) 245-1700

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2017, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system. There are no unregistered participants.

/s/ Emily Chiang
Emily Chiang, WSBA No. 50517
Dated: February 6, 2017

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief is 10 pages in length, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that this brief complied with typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally-spaced typeface using Microsoft Office 2011 in 14 point Times New Roman.

/s/ Emily Chiang
Emily Chiang, WSBA No. 50517
Dated: February 6, 2017