No. 17-35105

═══════════════════════════

**In the
United States Court of Appeals for the Ninth Circuit**

_____

STATE OF WASHINGTON; STATE OF MINNESOTA,
*Plaintiffs-Appellees*,
v.
DONALD J. TRUMP,
President of the United States, *et al.*
*Defendants-Appellants.*

_____

**On Appeal from the United States District Court
for the Western District of Washington**

_____

**Brief *Amicus Curiae* of U.S. Justice Foundation, Citizens United, Citizens United Foundation, English First Foundation, English First, Public Advocate of the United States, Gun Owners Foundation, Gun Owners of America, Conservative Legal Defense and Education Fund, U.S. Border Control Foundation, and Policy Analysis Center in Support of Defendants-Appellants' Motion for Stay Pending Appeal**

_____

| | |
|---|---|
| JOSEPH W. MILLER | HERBERT W. TITUS* |
|   Ramona, CA 92065 | WILLIAM J. OLSON |
| *Attorney for Amicus Curiae USJF* | JEREMIAH L. MORGAN |
| MICHAEL BOOS | ROBERT J. OLSON |
|   Washington, D.C. 20003 |   WILLIAM J. OLSON, P.C. |
| *Attorney for Amici Curiae CU & CUF* |   370 Maple Avenue W., Suite 4 |
| |   Vienna, Virginia 22180-5615 |
| *Attorney of Record |   (703) 356-5070 |
| February 6, 2017 | *Attorneys for Amici Curiae* |

═══════════════════════════

## DISCLOSURE STATEMENT

The *amici curiae* herein, U.S. Justice Foundation, Citizens United, Citizens United Foundation, English First Foundation, English First, Public Advocate of the United States, Gun Owners Foundation, Gun Owners of America, Conservative Legal Defense and Education Fund, U.S. Border Control Foundation, and Policy Analysis Center, through their undersigned counsel, submit this Disclosure Statement pursuant to Federal Rules of Appellate Procedure 26.1, 29(c).

All of these *amici curiae* are non-stock, nonprofit corporations, none of which has any parent company, and no person or entity owns them or any part of them. The *amici curiae* are represented herein by Herbert W. Titus, who is counsel of record, William J. Olson, Jeremiah L. Morgan, and Robert J. Olson of William J. Olson, P.C., 370 Maple Avenue West, Suite 4, Vienna, Virginia 22180-5615. *Amicus* United States Justice Foundation also is represented herein by Joseph W. Miller, 932 D Street, Suite 2, Ramona, California 92065. *Amici* Citizens United and Citizens United Foundation are also represented herein by Michael Boos, 1006 Pennsylvania Avenue SE, Washington, D.C. 20003.

                                                                     s/Herbert W. Titus
                                                                     Herbert W. Titus

## TABLE OF CONTENTS

                                                                                       Page

DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INTEREST OF *AMICI CURIAE*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT

    I.      The District Court's TRO Should be Stayed, as the President Had Full Authority to Issue His Executive Order of January 27, 2017. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

           A.      The President Has Near Plenary Authority Over Immigration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

           B.      Prior Presidents Have Exercised Broad Authority over Immigration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.     The Temporary Restraining Order Reinstating the Prior *Status Quo* for Refugees Threatens the Nation's Security. . . . . . . . . . . . . . . . . . . 7

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## INTEREST OF *AMICI CURIAE*[1]

*Amici* United States Justice Foundation, Citizens United, Citizens United Foundation, English First Foundation, English First, Public Advocate of the United States, Gun Owners Foundation, Gun Owners of America, Conservative Legal Defense and Education Fund, U.S. Border Control Foundation, and Policy Analysis Center are nonprofit organizations, exempt from federal income tax under either section 501(c)(3) or 501(c)(4) of the Internal Revenue Code ("IRC"). Each entity is dedicated, *inter alia*, to the correct construction, interpretation, and application of law. Their interest also includes protecting the our nation's borders, enforcement of immigration laws, separation of powers, and related issues.

Many of these *amici* have worked on these issues for many years, including the following during the last year: (i) a Legal Analysis of presidential candidate Trump's proposals to limit immigration from certain countries (Feb. 12, 2016); (ii) an *amicus* brief to the U.S. Supreme Court in support of a 26-State challenge to presidential executive actions that were clearly outside statutory authority (Apr.

---

[1] *Amici* requested and received the consents of the parties to the filing of this brief *amicus curiae*, pursuant to Rule 29(a), Federal Rules of Appellate Procedure. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

4, 2016); (iii) Comments to the Department of State regarding the proposed number of refugees for 2017 (May 19, 2016); (iv) a Legal Policy Paper analyzing the constitutional authority for States to enter into an interstate compact regarding immigration (Sept. 2, 2016); and (v) Comments to the U.S. Citizenship & Immigration Service regarding amendments to the Registration for Classification as Refugee form (Nov. 17, 2016).

## STATEMENT OF THE CASE

On February 3, 2017, the U.S. District Court for the Western District of Washington issued a "nationwide" Temporary Restraining Order ("TRO"), prohibiting "enforcement" of five sections of President Trump's Executive Order ("E.O.") of January 27, 2016 — section 3(c), 5(a), 5(b), 5(c), and 5,(e). The district court's Order explains the basis for its decision as follows:

> The court finds that the States have satisfied [the required] standards [for a TRO] and that the court should issue a TRO [including] the States are likely to succeed on the merits.... [District Court Order at 4.]

There follow a few sentences as to the harm allegedly suffered by the states, but no analysis whatsoever as to whether the plaintiffs have demonstrated that they are "likely to succeed on the merits." Remarkably, the district court's TRO[2] is wholly

---

[2] Moreover, the district judge issued no separate opinion justifying his TRO.

devoid of any analysis of the constitutional or statutory authority of the President to issue his Executive Order.[3] To correct that failure in legal analysis, Section I, *infra*, addresses the broad, even plenary authority of the President to restrict immigration from specific countries. Section II, *infra*, addresses the authority of the President to delimit refugee status when required by the national interest.

## ARGUMENT

**I. The District Court's TRO Should be Stayed, as the President Had Full Authority to Issue His Executive Order of January 27, 2017.**

    **A. The President Has Near Plenary Authority Over Immigration.**

President Trump's Executive Order repeatedly relied on 8 U.S.C. § 1182(f), which expressly authorizes the President to suspend or restrict the entry into the United States of "any aliens or of any class of aliens" that he determines would be "detrimental to the interests of the United States." This statute has been understood to give a President virtually unlimited power to suspend or restrict immigration within its framework. That statute has no language suggesting that the statutory power granted to the President could not be applied generally to an

---

[3] Contrast the conclusory approach taken by district Judge James L. Robart with the much more careful, textual, and analytical approach taken by district Judge Nathaniel M. Gorton in the District of Massachusetts in his ruling in Louhghalem, *et al.* v. Trump, Civil Action No. 17-10154-NMG (Feb 3., 2017) declining any injunctive relief in a similar challenge.

entire class based upon country of origin, as President Trump has done. Clearly, this is an area where Congress has agreed legislatively that the President should have wide berth to restrict foreign travel into the United States. Through more than 125 years of litigation and numerous Supreme Court decisions addressing the issue, the political branches, and especially the President, have been relatively unimpeded by the judiciary in their authority to make immigration decisions according to their political, social, and economic determinations.[4] *See* United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537 (1950). Moreover, there is a long line of cases holding that excluded aliens — those seeking to enter the United States — have no rights under the U.S. Constitution. *See, e.g.*, Ekiu v. United States, 142 U.S. 651, 659 (1892); Fok Yung Yo v. United States, 185 U.S. 296, 302 (1902); United States ex rel. Turner v. Williams, 194 U.S. 279, 294 (1904); Keller v. United States, 213 U.S. 138, 143-144 (1909); Mahler v. Eby, 264 U.S. 32, 40 (1924); Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953).

### B    Prior Presidents Have Exercised Broad Authority over Immigration.

The district court ignored prior valid exercises of presidential authority to exclude foreign persons for a wide variety of reasons.

---

[4] *See* Feere, Jon, "Plenary Power: Should Judges Control U.S. Immigration Policy?" http://cis.org/plenarypower/.

### 1. President Carter's Executive Order 12172 (Nov. 26, 1979).

After Iran took American citizens working in Iran hostage and seized our Embassy, President Carter issued Executive Order 12172, limiting entry by Iranian aliens into the United States. U.S. immigration officials required thousands of Iranian students to report to an immigration office, and students found to have visa violations were deported. In addition, on April 7, 1980, President Carter reportedly directed U.S. officials to invalidate all visas issued to Iranian citizens for future entry into the United States, and to reissue new visas only for compelling and proven humanitarian reasons, or where the U.S. national interest required it.[5]

### 2. President Reagan's 1981 Exercise of 8 U.S.C. § 1182(f).

In 1981, President Reagan authorized the interdiction of certain vessels containing undocumented aliens on the high seas. Proclamation No. 4865, *46 Fed. Reg. 48107* (published Oct. 1, 1981). At the same time, President Reagan issued Executive Order 12324, to interdict any "defined" vessel carrying such aliens. When challenged, a district court ruled that the President's power by such methods to suspend the entry of illegal aliens had a "clear constitutional basis." Haitian

---

[5] *See* http://www.newsmax.com/Newsfront/jimmy-carter-barred-iranians/2015/12/09/id/705127/.

Refugee Center, Inc. v. Gracey, 600 F. Supp. 1396, 1398, 1400 (D.D.C. 1985), *aff'd*, 809 F.2d 794 (D.C. Cir. 1987).

### 3. President Reagan's 1985 Exercise of 8 U.S.C. § 1182(f).

President Reagan signed Presidential Proclamation 5377 on October 4, 1985, based upon the authority vested in him by 8 U.S.C. § 1182(f) — the same statute invoked by President Trump — to suspend entry into the United States of certain classes of Cuban nationals as nonimmigrants. Certain aliens asserted that such action exceeded the government's authority and impinged on the members' First Amendment rights to freedom of association, speech, and religion. The government's action was sustained, and the suit dismissed. *See* Encuentro Del Canto Popular v. Christopher, 930 F. Supp. 1360 and 944 F. Supp. 805 (N.D. Cal. 1996).

### 4. President Obama's 2011 Exercise of 8 U.S.C. § 1182(f)

On August 4, 2011, President Obama issued Presidential Proclamation 8697, entitled Suspension of Entry as Immigrants and Nonimmigrants of Persons Who Participate in Serious Human Rights and Humanitarian Law Violations and Other Abuses. Section 1 of that Proclamation — again, issued under the authority of 8 U.S.C. § 1182(f) — suspends the entry into the United States, as immigrants or nonimmigrants, by any aliens who have engaged in "widespread or systematic

violence against any civilian population" based in whole or in part on any number of factors (*e.g,* race, descent, sex, religion, political opinion), as well as any alien who participated (or attempted or conspired to participate) in war crimes, crimes against humanity, or other serious violations of human rights.

**II.    The Temporary Restraining Order Reinstating the Prior *Status Quo* For Refugees Threatens the Nation's Security.**

In their Motion for a TRO to the district court, Plaintiff States contend that the balance of equities "tips sharply in favor of the State." Motion for TRO at 23. But they take no account of the equities that favor Defendants. And they are many. The fundamental premise upon which the President's E.O. is based is that the previous "issuance process" has not adequately "protect[ed] the American people from terrorist attacks by foreign nationals admitted to the United States." E.O. at 1. However, the foremost reason for the E.O. is to suspend admissions of foreign nationals, with the view of forming and implementing a more effective exclusionary process. E.O. at Sections 1-3. More particularly, Section 4 of the E.O. pinpoints the major problem with the status quo, and the paramount need for a suspension while a new policy is in the making. First, the E.O. sets a goal:

> The Secretary of State, the Secretary of Homeland Security, the Director of National Intelligence, and the Director of the Federal Bureau of Investigation shall implement a program, as part of the adjudication process for immigration benefits, to identify individuals

7

seeking to enter the United States on a fraudulent basis with the intent to cause harm, or who are at risk of causing harm subsequent to their admission. [E.O., Section 4.]

Then this section of the E.O. articulates six separate requirements designed to prevent fraud in the application process. *Id.* at 4.

Are there good and valid reasons for such detail to take such precautions by designing entirely new procedures to prevent fraud? In a report prepared by the U.S. Department of Homeland Security ("DHS") during the Obama Administration, it was observed that: "**The immigration system is a constant target for exploitation** by individuals who seek to enter the United States and who are otherwise ineligible for entry based on security grounds." *See* U.S. Department of Homeland Security, "Lack of Identity Documents in the Refugee Process" at 1 (emphasis added). The DHS Report found:

> **ICE's Refugee Program is particularly vulnerable to fraud** due to loose evidentiary requirements, where at times, the testimony of an applicant alone is sufficient for approval. [*Id.* (emphasis added).]

According to this Obama Administration DHS report, the problems with the current vetting system are legion:

- the processing of refugees by DHS officers takes place in foreign refugee camps;
- vetting typically takes place in areas where it is difficult to verify claims;
- biometric tools such as DNA testing and fingerprinting are nonexistent;
- lack of any identity (name and DOB) documents;

8

- unreliability of attestations such as former employers; and
- counterfeit or altered documents (medical, political activity, judicial papers).

Amazingly, the DHS report concluded that, instead of undermining one's claim for refugee status, this chronic lack of evidence has caused just the opposite response:

> The refugee and asylum laws purposefully contain **loose evidentiary requirements based** on the assumption that a true victim of persecution would not have the time or resources to obtain evidence of their persecution as they flee the country. This flexibility in the law, however, not only helps victims of persecution, it also allows others to exploit the system. [*Id*. (emphasis added).]

Indeed, with information like this, it is not surprising that the DHS memo was an internal one, made public by members of Congress in response to DHS testimony assuring the House of Representatives as the department sought to "increase the number of refugees from dangerous countries."[6] The *Washington Times* reported that the DHS testimony was elicited during hearings concerning President Obama's "'decision to increase overall refugee resettlement – and specifically that of Syrian refugees – ignor[ing] warnings from his own national security officials.'" With respect to the DHS document, itself, ICE Director Sarah Saldana said: "I have never seen this document before." *Id.*

---

[6] *Washington Times*, "DHS admits refugee fraud 'easy to commit,'" (Sept. 22, 2016).

9

That was then; this is now. President Trump's E.O. ends with a Section 10 entitled "Transparency and Data Collection." In the concluding section, the President vows to be "more transparent with the American people, and to more effectively implement policies and practices that serve the national interest." To that end, the executive order commands the Secretary of Homeland Security to report publicly within 180 days, and every 180 days thereafter, vital information concerning the threats of terrorism and violence against women from foreign nationals on American soil. Apparently, by seeking this TRO, the Plaintiff States prefer the *status quo ante*, irrespective of whether the terrorist threat is real. Certainly, this is not a judicial question that is properly presented to a federal judge to resolve. That is why the Congress has given virtually plenary authority over immigration and the refugee program to the President of the United States.

## CONCLUSION

For the foregoing reasons, the district court February 3, 2017 Temporary Restraining Order should be stayed pending appeal.

Respectfully submitted,

  /s/ Herbert W. Titus

| | |
|---|---|
| JOSEPH W. MILLER | *HERBERT W. TITUS |
| UNITED STATES JUSTICE FOUNDATION | WILLIAM J. OLSON |
| 932 D Street, Ste. 3 | JEREMIAH L. MORGAN |
| Ramona, California 92065-2355 | ROBERT J. OLSON |

10

| | |
|---|---|
| *Co-Counsel for Amicus Curiae* <br> U.S. Justice Foundation | *Attorney for Amici Curiae* <br> WILLIAM J. OLSON, P.C. <br> 370 Maple Avenue West, Suite 4 |
| MICHAEL BOOS <br> CITIZENS UNITED <br> 1006 Pennsylvania Avenue SE <br> Washington, D.C. 20003 <br> *Co-Counsel for Amici Curiae* <br> Citizens United and <br> Citizens United Foundation | Vienna, Virginia 22180-5615 <br> (703) 356-5070 |

February 6, 2017
*Attorney of record

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

IT IS HEREBY CERTIFIED:

1. That the foregoing Brief *Amicus Curiae* of U.S. Justice Foundation, *et al.* in Support of Defendants-Appellants' Motion for Stay Pending Appeal complies with the limitation set forth by Fed. R. App. P. 29(a)(5) and Circuit Rule 27-1(d), because this brief contains 10 pages, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 18.0.0.200 in 14-point CG Times.

/s/ Herbert W. Titus
_____
Herbert W. Titus
Attorney for *Amici Curiae*

Dated: February 6, 2017

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of U.S. Justice Foundation, *et al.*, in Support of Defendants-Appellants' Motion for Stay Pending Appeal was made, this 6th day of February 2017, by the Court's Case Management/Electronic Case Files system upon the attorneys for the parties.

/s/ Herbert W. Titus

_____

Herbert W. Titus
Attorney for *Amici Curiae*