# EXHIBIT B

Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,

Plaintiffs,

v.

Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Rex W. TILLERSON, Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,

Defendants.

Case No.: 2:17-cv-00135-JLR

**DECLARATION OF MATT ADAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, Matt Adams, declare as follows:

1)    I am counsel of record for Plaintiffs in this case. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

2)    I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would testify completely as set forth below.

**Notice to Defendants of Motion for Preliminary and Possible Emergency Relief**

3)    On February 4, 2017, Stacey I. Young of the Office of Immigration Litigation, Civil Division, of the U.S. Department of Justice, called me on my office number and left a message advising that she was assigned to this case to represent Defendants. She also reached out to me via email and asked that I call her. I called her that same day, February 4, 2017, and we discussed the current status of the named Plaintiffs in the complaint. I advised that we were planning on filing a motion for preliminary injunctive relief on Monday, February 6, 2017, and were evaluating whether any emergency motion for a Temporary Restraining Order ("TRO") would also be required. I advised that in light of this Court's order granting a TRO in *Washington v. Trump*, 2:17-cv-141-JLR (W.D. Wash.), we did not believe we would need to file a TRO.

4)    On February 5, 2017, I contacted Defendants' counsel, Stacey I. Young via email. I advised that due to the unusual development of the appeal of the TRO in *Washington*, and the Ninth Circuit's order setting a briefing schedule in that case, on Monday, February 6, 2017, we would file a motion for preliminary injunctive relief that would include a request for a temporary restraining order in the event that the TRO entered by this Court in *Washington v. Trump*, 2:17-cv-141-JLR (W.D. Wash.), is reversed on a procedural basis or a reason other than a determination with respect to the merits of the challenge.

5)    Later that day, on February 5, 2017, I spoke with Ms. Young over the phone, and reiterated Plaintiffs' plans to file a motion for a preliminary injunction and a request for a TRO

ADAMS DECL. ISO PLS.' MOT. FOR
TRO AND PRELIM. INJ.
Case No. 2:17-cv-00135-JLR    - 1 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

in the event that the TRO entered by this Court in *Washington v. Trump*, 2:17-cv-141-JLR (W.D. Wash.), is reversed on a procedural basis or a reason other than a determination with respect to the merits of the challenge.

**Evidence in Support of Plaintiffs' Motion**

6)　　Attached as Exhibit A is a true and correct copy of a page that previously appeared on the Department of State's website at https://travel.state.gov/content/visas/en/immigrate/Immigrate-Announcement.html.  Plaintiffs' counsel accessed that document on February 1, 2017. Currently, the page as it appeared on February 1, 2017 is archived on the website of the American Immigration Lawyers Association, AILA Doc. No. 17020134, at http://www.aila.org/infonet/nvc-provides-guidance-cancellation-iv-interviews.

I declare under penalty of perjury of the laws of the state of Washington and the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Seattle, WA on the 6th day of February, 2017.

By:

s/Matt Adams
Matt Adams

ADAMS DECL. ISO PLS.'  MOT. FOR
TRO AND PRELIM. INJ.
Case No. 2:17-cv-00135-JLR　　　　　　- 2 -

Northwest immigrant rights project
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

## CERTIFICATE OF SERVICE

I, Matt Adams, hereby certify that on February 6, 2017, I arranged for electronic filing of the foregoing declaration with the Clerk of the Court using the CM/ECF system. I also emailed Defendants' counsel, Stacey I. Young, this filing at Stacey.Young@usdoj.gov. Lastly, I arranged for mailing of these documents by U.S. first class mail, postage prepaid, to each of the following:

Donald TRUMP, President of the United States of America
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

U.S. CITIZENSHIP AND IMMIGRATION SERVICES
Office of the General Counsel
United States Department of Homeland Security
Washington, DC 20528

U.S. DEPARTMENT OF STATE
The Executive Office
Office of the Legal Adviser, Suite 5.600
600 19th Street NW
Washington, DC 20522

Lori SCIALABBA, Acting Director of USCIS
Office of the General Counsel
United States Department of Homeland Security
Washington, DC 20528

Tom SHANNON, Acting Secretary of State
The Executive Office
Office of the Legal Adviser, Suite 5.600
600 19th Street NW
Washington, DC 20522

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
Office of General Counsel
Washington, DC 20511

U.S. DEPARTMENT OF HOMELAND SECURITY
Office of the General Counsel
Washington, DC 20528

Michael DEMPSEY, Acting Director of National Intelligence
Office of the Director of National Intelligence
Office of General Counsel
Washington, DC 20511

John F. KELLY, Secretary of Homeland Security
Office of the General Counsel
United States Department of Homeland Security
Washington, DC 20528

Executed in Seattle, Washington, on February 6, 2017.

s/ Matt Adams
Matt Adams, WSBA No. 28287

ADAMS DECL. ISO PLS.' MOT. FOR
TRO AND PRELIM. INJ.
Case No. 2:17-cv-00135-JLR

- 3

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

# EXHIBIT A

travel.state.gov    U.S. Passports & International Travel    Students Abroad    U.S. Visa    Intercountry Adoption    International Parental Child Abduction    |     Contact Us     Find U.S. Embassies & Consulates

SEARCH

travel.state.gov > Visas > Immigrate > **Important Announcement**

Print    Email

# Important Announcement

Pursuant to the Executive Order on Protecting the Nation from Terrorist Attacks by Foreign Nationals signed on January 27, 2017, the Department of State has temporarily stopped scheduling appointments and halted processing of immigrant visa applications for individuals who are nationals or dual nationals of Syria, Iraq, Iran, Libya, Somalia, Sudan, and Yemen.

The National Visa Center has cancelled all scheduled immigrant visa interviews for these applicants scheduled in February 2017. This includes all visa categories, whether they are family- or employment-based. Applicants for fiancé visas ("K" visas) are included. We apologize for any inconvenience this causes. Once it is appropriate, the National Visa Center or a U.S. Embassy or Consulate abroad will notify you of a new interview date and time.

If you received an interview appointment in February and have not yet attended the required medical exam, please cancel your medical examination appointment. Medical exam results are only valid for six (6) months and we cannot predict when your visa interview will be rescheduled. When the National Visa Center or U.S. Embassy is able to reschedule your interview, they will contact you.

The National Visa Center will continue to work on in-process cases for these applicants up to the point of the interview. You should continue to pay fees, complete your Form DS-260 immigrant visa application, and submit your financial and civil supporting documents to NVC. NVC will review your case file and can qualify your case for an appointment. However, you will not receive a visa interview until further notice.

## *Please review the below Frequently Asked Questions for more information.*

Collapse All

#### What if I have a visa interview scheduled in February?

Your interview has been cancelled. You do not need to take any action at this time. The National Visa Center will contact you with a new appointment date at the appropriate time. However, we cannot predict when that will be. Please do not call NVC to ask about an appointment; they have no information on the possible timing of future interviews.

#### I have an emergency. Can I request an expedited appointment?

No. The Department of State may not conduct immigrant visa interviews for any persons who are nationals of Syria, Iraq, Iran, Libya, Somalia, Sudan, and Yemen at this time.

#### Will my case move to the back of the line for a rescheduled appointment?

No. The National Visa Center schedules appointments in the order by which they became documentarily qualified. When NVC is able to reschedule your visa interview, you will receive an appointment before cases that completed their paperwork and processing after yours.

#### I have a visa interview in February and I already paid for my medical exam. Can I get a refund?

That is up to the physician and/or clinic that conducted your examination. Medical exam results are valid for U.S. immigration purposes for six (6) months. If your interview is rescheduled and you enter the United States as an immigrant before your medical exam results expire, you will not need another medical exam.

#### What visa categories does this affect?

This affects <u>all</u> immigrant visa categories, including immediate relatives; family-based and employment-based preference categories; follow-to-join family members of refugees and asylees (Form I-730); fiancé visas (Form 1-129F); and international adoptees (Form I-600A).

**I am currently working on my case with NVC. Can I continue?**

Yes. You should continue to pay fees, complete your Form DS-260 immigrant visa application, and submit your financial and civil supporting documents to NVC. NVC will continue reviewing your case file and can qualify your case for an appointment. However, you will not receive a visa interview until further notice.

Español

## More Information

- A-Z Index
- **Latest News**
- What is a U.S. Visa?
- Diversity Visa Program
- Visa Waiver Program
- Fraud Warning
- Find a U.S. Embassy or Consulate
- Straight Facts on U.S. Visas

## In the United States

- VisitTheUSA



FAQs: About Visas - The Basics



A Guide for New Immigrants

About Us

Visa Newsroom

Reports and Statistics

Law and Policy

Find a U.S. Embassy or Consulate

Contact Us

Careers

Consular Notification and Access

**STAY CONNECTED**

Dipnote Blog     @travelgov

Facebook     Youtube

Flickr     RSS

travel.state.gov  |  U.S. Passports & International Travel  |  Students Abroad  |  **U.S. Visa**  |  Intercountry Adoption  |  International Parental Child Abduction

Ex. A to Adams Declaration

Case No. 2:17-cv-00135-JLR 2

https://travel.state.gov/content/visas/en/immigrate/Immigrate-Announcement.html

AILA Doc. No. 17020134. (Posted 2/1/17)

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

2/3

Privacy    Copyright & Disclaimer    FOIA    No FEAR Act Data    Office of the Inspector General    USA.gov    GobiernoUSA.gov

This site is managed by the Bureau of Consular Affairs, U.S. Department of State.

Ex. A to Adams Declaration
Case No. 2:17-cv-00135-JLR 3
https://travel.state.gov/content/visas/en/immigrate/Immigrate-Announcement.html

**AILA Doc. No. 17020134. (Posted 2/1/17)**

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

3/3

Honorable James L. Robart

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,<br><br>Defendants. | Case No.: 2:17-cv-00135-JLR<br><br>**DECLARATION OF ABDELRAZIQ ADAM IN SUPPORT OF PLAINTIFFS** |

DECLARATION OF
ABDELRAZIQ ADAM
Case No. 2:17-cv-00135-JLR          - 0

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, Abdelraziq Adam, declare under penalty of perjury as follows:

1.      I am a United States (U.S.) citizen and I live in Burien, Washington State. I am a University of Washington (UW) Alumni, and current UW student earning a Post Baccalaureate in Accounting.

2.      I was born in Sudan, and I came to the U.S. when I was about 20 years old. I became a U.S. citizen in around 2012. When I moved to the U.S., I had no family, and my English skills were very limited. I worked in warehouses and assembly production lines, and I was able to attend Highline Community College in the evening. I did successfully complete my Associate of Arts perquisites and then transferred to UW. During my academic career, I did encounter many hardships; my mother passed away, and two years later my father passed away. Yet, I have been part of Washington State communities. I volunteered for middle schools for two quarters and help students in various subjects. I also helped many high school students through UW Dream Project; I recall helping students with their personal statement letters, scholarship applications and the process of college admission. Moreover, I did take advantage of my Accounting skills and helped low income communities to file their tax returns. Furthermore, I volunteered six month for Washington State Attorney General's Office in the Consumer Protection Division. These are few of the activities that I participated in during my academic career.

3.      My wife's name is Alya Ahmed, and she is from Sudan. We have been married since May 3, 2013. During our relationship, I did visit my wife three times, and the last time I visited her was in March 2016.

4.      In June 2014, I did submit form I-130 petition, and the United States Citizenship and Immigration Services (USCIS) approved my wife's petition. I paid the required fees for my wife's consular process on February 27, 2015.

5.      My wife had an interview in November 2015, but the Consulate thought that we were first cousins, and they returned to USCIS for review. However, the USCIS found no evidence that we were first cousins. Therefore, the USCIS reaffirmed my wife's petition, and they

DECLARATION OF
ABDELRAZIQ ADAM
Case No. 2:17-cv-00135-JLR                    - 1

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

forwarded to the National Visa Center (NVC).

6.      On January 24, 2017, the NVC notified me by mail that they completed the review, and they were forwarding my wife's case to the U.S. Consulate in Khartoum. The process of my wife's case has taken over two years, and as a result of President Trump's executive order that banned all Sudanese visas for at least 90 days, the U.S. Consulate in Sudan refuses to issue a visa to my wife even though all the documents have been submitted, reviewed and approved. The case status of my wife with the NVC now says it's under administrative processing, updated January 30, 2017.

7.      I have not seen my wife since March 2016, and this executive order has at least two irreparable impacts on our lives:

8.      First, I am on my final quarter to graduate, and I cannot focus on my studies. I also have trouble sleeping well because I worried what would happen to my wife. In addition, as a citizen, I am concern about my constitutional rights because this executive order is discriminatory. My wife lives alone in Sudan, and she does not know what would happen to her. Since my parents passed away and had no chance to attend any of my graduations, I was hoping my wife could attend this lifetime opportunity.

9.      Second, I am financially responsible to pay a rent here and in Sudan and other living expenses to wife, and I do budget about $550 monthly to support her. The Consulate already consumed one year suspecting that we were first cousins, and I did spend about $7,000 during that time supporting my wife. I also spent $1,500 for airfares when I went to visit her in March 2016 after the Consulate returned her application to USCIS for review. Consequently, this executive order is causing more trauma, anxiety and financial hardship to me and my wife.

10.     I would like my wife to come to the U.S. because this is my home. We would like to settle together and help each other as a family. Even though I did visit my wife three times during our marriage, we have been a part for about three and half years because those visits were for a short period of time; I had to return to U.S. to continue my studies. As I mentioned above,

DECLARATION OF
ABDELRAZIQ ADAM
Case No. 2:17-cv-00135-JLR                    - 2 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

my parents passed away, and my wife is half and or part of my life. We did not marry to live across continents and have a relationship from far distance. Therefore, I ask this court to issue court order to allow U.S. Consulate in Khartoum, Sudan to resume issuance of my wife's visa immediately. Thank you.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge or belief.

Executed on this 2nd day of February, 2017, in Seattle, Washington State

_____
Abdelraziq Adam

DECLARATION OF
ABDELRAZIQ ADAM
Case No. 2:17-cv-00135-JLR                    - 3 -

Northwest Immigrant Rights Project
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,<br><br>        Plaintiffs-Petitioners,<br><br>vs.<br><br>Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,<br><br>        Defendants-Respondents. | Case No.: 2:17-cv-00135-JLR<br><br>**DECLARATION OF ELIAS ABDI IN SUPPORT OF PLAINTIFFS** |

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, Elias Mohamud ABDI, declare under penalty of perjury as follows:

1.      I am a United States citizen. I live in Seattle, Washington. I am a taxi and Uber driver.

2.      I came to the United States as a refugee in about 2009. At that time, I was living in Kenya, but I was born in Somalia. I became a U.S. citizen in March 2015.

3.      I am married to Nasteho Adan Kulane, since March 10, 2014. We married in Uganda. My wife Nasteho is a citizen of Somalia. We have two children together. Our first son, A.E.M., was born on January 1, 2015, and our second son, M.E.M., was born on September 29, 2016. My wife and our two sons are currently in Kenya, with my mother, while we wait to be together. I have not seen my wife and oldest son since early September 2016, and I have yet to meet my second son. I send money to my family every month, sometimes every fifteen days. I want my family here with me.

4.      I petitioned for my wife in around May 2014. I submitted her online immigrant visa application (Form DS-260) on August 19, 2015. My wife was interviewed on August 22, 2016 in Nairobi, Kenya and her immigrant visa was approved and issued to her on January 20, 2017. She picked up her immigrant packet on January 23, 2017.

5.      On Friday, January 27, 2017 around 9:59 p.m. I booked a flight for my wife and infant son (costing close to $1,400). I did this before I knew about the President's order to stop some people to get in the U.S., targeting people like my wife who is Somalian. My wife went to the airport in Nairobi, Kenya with our infant son, on January 29, 2017, and was told by the Emirates airline crew that they could not take her to the United States because of the ban. I called to so many places asking what was happening. I booked another flight, on January 30, 2017, for my wife and son through Delta Airlines (costing about $1,900). I asked if I could book the ticket even though there was a ban. I was told if my wife had a valid visa, they could bring her. My wife went to the airport on 1/31, but the airline told her again that they would not take her.

6.      My family-based petition for my oldest son, A.E.M. was approved on October 21, 2016. I submitted his immigrant visa application (Form DS-260) on November 23, 2016 and was waiting

DECLARATION OF
ELIAS MOHAMUD ABDI
Case No. 2:17-cv-00135-JLR                     - 1 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

for his interview in Nairobi, Kenya. I was told he would get an interview in early January, but I have not yet heard from them.

7.      My wife and two children have never been to the U.S. My wife and my infant son, who has a U.S. citizen passport, were not allowed on the plane twice. I have incurred so much financial hardship because of this. I have spent too much. I did the petition process by myself. This is heartbreaking. I have not been able to get through the embassy.

8.      Today, on January 31, 2017, I received an email about my wife's immigrant visa. They told me it had been revoked because of the ban.

9.      I did not think this would be possible. I did not believe people were actually going to be affected like this. Asking why I want my family with me is very silly and shameful. There is no need to ask this question. I do not want to be separated from my family. I cannot continue to endure financial and emotional hardship. I have to households to support, here and in Kenya. I need my family with me.

10.     My family received an exit letter from Kenya. It's going to expire in about 20 days. My wife who is Somalian citizen is not allowed to stay in Nairobi past that permit date.

11.     Please help stop this injustice. It is not just me or my family who is suffering.


I declare under penalty of perjury under the laws of the United States the foregoing is true and correct to the best of my information, knowledge, and belief.


Executed on this 31st day of January, 2017, in Seattle, Washington.

_____
Elias Mohamud ABDI

DECLARATION OF
ELIAS MOHAMUD ABDI
Case No. 2:17-cv-00135-JLR                    - 2

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Honorable James L. Robart

1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT
9        FOR THE WESTERN DISTRICT OF WASHINGTON
                      AT SEATTLE
10

11 | Juweiya Abdiaziz ALI; A.F.A., a minor; Reema       Case No.: 2:17-cv-00135-JLR
   | Khaled DAHMAN; G.E., a minor; Ahmed
12 | Mohammed Ahmed ALI; E.A., a minor; on
   | behalf of themselves as individuals and on         DECLARATION OF AHMED MOHAMMED
13 | behalf of others similarly situated,                AHMED ALI
                                                         IN SUPPORT OF PLAINTIFFS
14 |             Plaintiffs-Petitioners,

15 | v.

16 | Donald TRUMP, President of the United States
   | of America; U.S. DEPARTMENT OF STATE;
17 | Tom SHANNON, Acting Secretary of State;
   | U.S. DEPARTMENT OF HOMELAND
18 | SECURITY; John F. KELLY, Secretary of
   | Homeland Security; U.S. CITIZENSHIP AND
19 | IMMIGRATION SERVICES; Lori
   | SCIALABBA, Acting Director of USCIS;
20 | OFFICE OF THE DIRECTOR OF NATIONAL
   | INTELLIGENCE; Michael DEMPSEY, Acting
21 | Director of National Intelligence,
22 |
   |            Defendants-Respondents.
23 |

24

25

26

27

28

DECLARATION OF                                      NORTHWEST IMMIGRANT RIGHTS PROJECT
AHMED MOHAMMAD AHMED ALI                                          615 Second Ave., Ste. 400
Case No. 2:17-cv-00135-JLR            - 0                            Seattle, WA 98104
                                                                      206-957-8611

I, Ahmed Mohammad Ahmed ALI, declare under penalty of perjury as follows:

1.     I was born on May 1, 1978 in Alshear, Ibb, Yemen. I currently reside at 724 Gamay Court, Los Banos, CA, 93635. I make this declaration in support of a temporary restraining order to help effectuate my daughter, E.A.'s entry to the United States.

2.     I am married to a U.S. citizen and have 2 U.S. citizen children and one child with a valid immigrant visa, but who has been denied the ability to board a plane due to the January 27, 2017 executive order, merely because she is a citizen of Yemen.

3.     My wife and I have been trying for so many years to have our whole immediate family united safely in the United States. My wife Intikhab Mohamed Saleh ("Intikhab") and I own a home in Los Banos, California where we live with our two U.S. citizen children, and where we have been hoping that our daughter E.A. would also be residing. We have a monthly mortgage payment of approximately $950. My wife has been helping to raise our daughters. We are a very close family. Our family is Muslim.

4.     I am the sole breadwinner for my family of five. I am the manager at the Buy N Save Market in Los Banos that is in a local shopping market and part-owner of Los Amigos. I have worked at Buy N Save since 2004. I work long hours so that I can provide for my family. I make approximately $35,000 a year. I pay my U.S. taxes.

5.     I married my wife, Intikhab on May 3, 2001. My eldest daughter, S.A.M.A. was born within one year of our marriage – on February 24, 2002. Both my wife Intikhab and my daughter S.A.M.A. are U.S. citizens.

6.     I first entered the United States with my wife and daughter S.A.M.A. on January 27, 2004, and became a lawful permanent resident that date, based on a visa petition my U.S. citizen wife had filed on my behalf. I became a naturalized U.S. citizen on July 19, 2010.

7.     Approximately 6 months after my family and I entered the United States in 2004, we received news that Intikhab's mother had fallen ill and required caretaking assistance. As a result, Intikhab decided she would temporarily return to Yemen (with S.A.M.A.) to care for her mother. However, the length of Intikhab's trip increased because my mother-in-law's health

DECLARATION OF
AHMED MOHAMMAD AHMED ALI
Case No. 2:17-cv-00135-JLR          - 1 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

improved slowly. By the time Intikhab left for Yemen, she was already pregnant with my second daughter, E.A.A. E.A.A. was born while my wife was still in Yemen, on December 3, 2004

8. I remained in the United States where I was working to financially support the family. When my wife left for Yemen, we planned for her to return to the United States as soon as her mother's health improved. At no point did we intend for my wife to live in Yemen permanently. With my second child on the way, I knew it was best that I remain in the United States, although I knew the separation would be difficult.

9. When I learned that my mother-in-law's health had improved to the point that she no longer required my wife's caretaking assistance, I immediately began making arrangements for my family to join me in the United States. By 2010, I had saved enough money to cover the travel expenses for my entire family (Intikhab, S.A.M.A., and E.A.A.).

10. Around 2010, when my wife and daughters was considering joining me in the United States, we thought our daughter E.A.A. was a U.S. citizen since both me and my wife were citizens. However, we didn't know the technicality of the law, and only later learned that in fact she was not a U.S. citizen because my wife had not physically resided in the United States for 5 years before E.A.A.'s birth. Thus, we learned we needed to have her go through the immigrant visa consular process.

11. Thus, on April 25, 2011, I filed a family-based immigrant visa petition (Form I-130) for my daughter E.A.A. with United States Citizenship and Immigration Services ("USCIS") along with the requisite $420 filing fee. USCIS approved the immediate relative I-130 petition for E.A.A. on June 10, 2013.

12. On August 11, 2014, E.A.A., with the assistance of counsel, filed the Form DS-260, Immigrant Visa Electronic Application. On August 12, 2014, counsel for E.A.A. emailed the National Visa Center all of the civil documents.

13. Meanwhile, my wife had continued to stay with our older daughter S.A.M.A. and E.A.A. in Yemen so that they travel to the United States together. However, while the immigrant visa application was pending, the situation in Yemen deteriorated and became increasingly

DECLARATION OF
AHMED MOHAMMAD AHMED ALI
Case No. 2:17-cv-00135-JLR                          - 2 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

dangerous. Frustrated that the immigrant visa process was taking so long, and worried about the security situation in Yemen, my wife and I made the difficult decision sometime in 2013 that she and S.A.M.A. would come to the United States, and E.A.A. would remain in Sana'a with my parents, her grandparents. We were hopeful the immigrant visa would be approved soon.

14.     My wife and I have had another daughter, S., who was born on February 4, 2015 in the United States and is a U.S. citizen.

15.     Meanwhile, the consular services in Yemen shut down so we learned the immigrant visa interview would be scheduled at a different consulate. Finally, on December 15, 2016, the National Visa Center sent an email that an immigrant visa interview was scheduled for January 22, 2017.

16.     I then made arrangements for my daughter to be able to appear at this interview. E.A.A.'s uncle helped her to travel by bus for over fifteen hours through a very dangerous part of Yemen, and then took a flight from Aden, Yemen to Jordan. I meanwhile flew from the United States to Jordan to meet my daughter. We then obtained a visitor visa for my daughter to travel from Jordan to Djibouti. My Djibouti visa and my daughter's Djibouti visa were issued on January 15, 2017 and are valid for one entry for 14 days. We then flew from Jordan to Djibouti on January 17, 2017.

17.     We arrived in Djibouti with enough time that my daughter could get her medical examination that was required for the immigrant visa interview.

18.     On January 22, 2017, I accompanied my daughter E.A.A. to the immigrant visa interview at the U.S. Embassy in Djibouti, and we were notified that the immigrant visa was approved. We were required to give the Embassy E.A.A.'s passport so that the visa could be issued. We were instructed to check a website to see when visa would be ready to pick up.

19.     We checked the website and learned the visa was issued on January 25, 2017, and went to pick up the visa at the next available time that was permissible, which was on Thursday, January 26, 2017. The visa is valid until July 21, 2017.

DECLARATION OF
AHMED MOHAMMAD AHMED ALI
Case No. 2:17-cv-00135-JLR                   - 3 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

20.     We quickly attempted to make flight arrangements to the United States. We first arranged a flight that departed on Friday, January 27, 2017, but flight flew through Canada, and the airline called and said we would have to cancel the flight because my daughter didn't have a visa to Canada. We therefore quickly booked the next flight we could, which left on Saturday, January 28, 2017.

21.     Our Ethiopian Airlines flight was scheduled to depart Djibouti on Saturday, January 28, 2017 at 7:00 pm local time (which was 6am pacific time). The flight had multiple layovers, but final destination was San Francisco International Airport. However, after we had gone through security and were getting ready to board our flight, we were told by airline officials that my daughter was not permitted board the flight due to the U.S President's Executive Order that was issued on January 27, 2017. I immediately called my attorney to inform her of the situation.

22.     On January 28, 2017, my attorney sent a letter to the U.S. Embassy in Djibouti requesting that my daughter E.A.A. be issued a travel letter because she should qualify for a case-by-case exemption to the executive order because it would in the national interest to permit her to come to the United States with our family. She spoke to a consular officer in Djibouti on January 30, 2017, but was informed that the embassy did not have guidance yet on how the waivers to the executive action would be reviewed or issued.

23.     We have thus been extending our stay at a hotel in Djibouti, which is quite expensive. We had been paying approximately $115 a night, although recently moved to a smaller and more affordable room for $80 a night.

24.     I was able to take a leave of absence from my work to travel to help my daughter E.A.A. come to the United States. But now, I do not know when I will be able to return to the United States and do not know when I will be able to earn money for my family.

25.     The uncertainty of our situation is very stressful. We have no idea when we will be able

DECLARATION OF
AHMED MOHAMMAD AHMED ALI
Case No. 2:17-cv-00135-JLR                    - 4 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

to travel to the United States. I obviously cannot leave my 12-year-old daughter alone. We are currently temporarily staying Djibouti, where we have no family or friends, and it is very expensive stay. I am worried because both my visa and my daughter's visa for Djibouti have expired. But we have nowhere else to go. We don't want to return to Yemen because it is extraordinarily dangerous, and a very long journey. All we want is for our family to be united in our home in the United States.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, belief.

Executed on this 1st day of February, 2017, in Djibouti, Djibouti.

_Ahmed Mohammed Ahmed Ali_

Ahmed Mohammed Ahmed Ali

DECLARATION OF
AHMED MOHAMMAD AHMED ALI
Case No. 2:17-cv-00135-JLR          - 5 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,

Plaintiffs,

v.

Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,

Defendants.

Case No.: 2:17-cv-00135-JLR

**DECLARATION OF REEMA KHALED DAHMAN IN SUPPORT OF PLAINTIFFS**

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, Reema Khaled Dahman, declare under penalty of perjury as follows:

1.   I am over the age of eighteen, am competent to testify to the matters below, and make this declaration based on personal knowledge.

2.   I am a lawful permanent resident. I live in Seattle, Washington. I work as a caregiver.

3.   I came to the United States with an immigrant visa on September 18, 2012. I am from Syria.

4.   My son G.E. was born on May 14, 2000 in Daara, Syria. I got separated from G.E.'s biological father when I was two months pregnant with G.E. He was an abusive person. After I got separated from G.E.'s father, I started living with my parents. After G.E. was born, we continued living with them. At the time, I was working as an agricultural engineer and I was able to provide for my family.

5.   I got married to my second husband on January 6, 2007 in Daara, Syria. He is a U.S. citizen. We had two sons together while we were living in Syria, one born in October 2007 and the other in October 2008.

6.   After the Syrian conflict started in 2011, my husband wanted to come back to the United States. He filed a petition for me and for our two sons, but he did not file one for my son G.E. In our culture, it is not customary for a man to raise another man's son, even in circumstances like ours. Although I did not want to leave G.E., I was sure that I could figure out a way to bring him with me soon enough.

7.   In January 2012, while the petitions were pending, my parents and G.E. moved to Damascus, Syria because conflict was getting worse and worse in Daraa. I had to stay in Daara with my husband and our two sons. Between January 2012 until June 2012, my son G.E. would come to visit his paternal grandparents and I would see him, too. On June 2012 I saw my son G.E. for the last time. I did not know then that I would not see him again. On August 9, 2012, I received my immigrant visa from the U.S. Consulate in Amman, Jordan.

DECLARATION OF
REEMA KHALED DAHMAN
Case No. 2:17-cv-00135-JLR                     - 1 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

8.    After we came to the United States, we lived in very poor conditions at my brother-in-law's house for one year. When we finally rented our apartment in August 2013, I was the only one working and supporting my family. I kept wanting to bring my son G.E. here as well. I remember very well one day my husband said "I feel like you want to bring your son here." When I answered "yes", he said "I didn't bring you here so that you can bring your son." I felt stuck. I did not know the immigration laws of the United States, I did not know that I could petition for my son G.E. as a lawful permanent resident. I thought I had to be a U.S. citizen.

9.    In October 2015, through the help of Refugee Women's Alliance and Northwest Immigrant Rights Project, I found out that as a lawful permanent resident I could petition for my son G.E.. I filed the Form I-130, family petition, on October 19, 2015 with U.S. Citizenship and Immigration Services ("USCIS").

10.    Given the terrible situation in Syria, I also submitted a request for Humanitarian Parole on November 30, 2015 with USCIS asking for a favorable exercise of parole so that my son G.E. could travel to the United States based on urgent humanitarian reasons and we can be reunited after so many years. No child should face the situation my son or any other child has been experiencing in Syria. My son has no future there; he has not been able to attend school for the last three years. Schools are no longer functioning; so many teachers have fled the country. My heart broke into pieces during one of our rare conversations with him when he told me "Mom, I feel like I am forgetting how to write." That is not the future I dreamt for him.

11.    The family petition I-130 was approved by USCIS on June 1, 2016. Towards the end of July 2016, I received immigrant visa and affidavit of support fee bills from the National Visa Center ("NVC") to continue with the consular process. I started gathering the civil and financial documents. Meanwhile, the Humanitarian Parole request I filed was still pending.

12.    On September 23, 2016, ten months after I filed for humanitarian parole, I received a Request for Evidence notice from USCIS asking for a detailed explanation of why my son G.E. cannot live with his biological father in Syria while waiting for the adjudication of his immigrant

DECLARATION OF
REEMA KHALED DAHMAN
Case No. 2:17-cv-00135-JLR                    - 2 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

visa. The request for evidence also asked me to provide a DNA test result to establish the claimed biological relationship between my son and me. I prepared a detailed explanation why my son could not live with his biological father and I was ready to do the DNA test. Upon researching for the laboratories accredited by the American Association of Blood Banks ("AABB"), I learned that there is no AABB accredited laboratory where a DNA test could be conducted in Syria. My son had to travel to Jordan or another neighboring country in order to do the DNA test. This was impossible—he is only 16 years old. He cannot travel safely from Syria to Jordan and back on his own, and he had no other family to take him. Unfortunately, we could not provide the DNA test for these reasons. I explained this to USCIS.

13.     Meanwhile, I electronically submitted his online immigrant visa application (Form DS-260) on December 2, 2016 to NVC to continue with his immigrant visa process.

14.     On December 8, 2016, I received a notice from NVC asking for a Syria Police Clearance Certificate (Judicial Record Extract) for my son G.E. as part of the consular process so that his immigrant visa interview could be scheduled.

15.     The day before the Executive Order was announced, on January 26, 2017, I received a denial notice of the Humanitarian Parole I had requested. The denial notice indicated "Use of the Secretary's parole authority is discretionary, justified on a case-by-case basis, and limited by law to include only to those requests that are based upon 'urgent humanitarian reasons,' or 'significant public benefit.'" I thought that being a teenager in a war-torn country was an urgent humanitarian reason. I was crushed that the parole was denied. I had explained to USCIS the danger my son is in. The situation in Syria is so unstable that my son has even been kidnapped once. I am afraid for his safety the longer we wait.

16.     The day after the denial notice, on January 27, 2017, when I heard the Executive Order of the President, I was shocked. My heart sank. I felt that all the doors are closing on me. I waited so long to be with my son and now I was left with nothing. I haven't seen my son for almost five years. We were so close to being reunited. This executive order took my dream away. I know

DECLARATION OF
REEMA KHALED DAHMAN
Case No. 2:17-cv-00135-JLR                          - 3 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

they say it will only cause delay for a few months, but there is no guarantee of that. Besides, a few months is a long time in a country as dangerous as Syria. Do you know how it feels to live everyday not knowing if you will ever see your child again? I do.

17.    I want to be reunited with my son like any other mother would want in this situation. The war in Syria is getting worse and worse. My mother is elderly and sick, she cannot take care of G.E. like she used to. My father passed away. My siblings fled Syria. I cannot leave my two sons in the United States and go back to Syria. But I also cannot take my sons to live in the midst of a war that never seems to come to an end. It is an impossible situation.

18.    I hope I can see my son soon.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 6th day of February, 2017, in Seattle, Washington.

Reema Khaled Dahman

DECLARATION OF
REEMA KHALED DAHMAN
Case No. 2:17-cv-00135-JLR                - 4 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Honorable James L. Robart

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated, | Case No.: 2:17-cv-00135-JLR |
| Plaintiffs-Petitioners, | DECLARATION OF CAROL E. EDWARDS IN SUPPORT OF PLAINTIFFS |
| v. | |
| Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence, | |
| Defendants-Respondents. | |

# DECLARATION UNDER OATH

I, Carol L. Edward, hereby declare under penalty of perjury of the law of the State of Washington, and the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

1. My Law Offices, the Law Offices of Carol L. Edward & Associates, P.S., are the attorneys of record for Ibado Hassan and Isahaq Ahmed Rabi. Attorney Eric Lin was involved in assisting the clients with processing the paperwork.

2. Ibado Hassan is a United States citizen and sponsored her husband Isahaq Ahmed Rabi to join her in the United States.

3. Ibado and Isahaq went through all the normal legal channels and met all the requirements for Isahaq to immigrate to the United States as a lawful permanent resident, commonly referred to as a green card holder. This includes filing paperwork with the U.S. Department of Homeland Security: United States Citizenship and Immigration Services, the National Visa Center, and the U.S. Department of State.

4. Isahaq is a Somali national and has been living in the country of Austria with a refugee application pending. He fled Somalia due to serious and life threatening problems he faced in Somalia.

5. Isahaq traveled to the U.S. with a refugee travel document issued by the country of Austria and with a validly issued immigrant visa issued by the U.S. Consulate in Vienna, Austria. He had previously been interviewed and submitted the necessary information so that background security checks could be completed prior to his visa issuance by the American Consulate.

6. Isahaq flew to the U.S. with a one-way ticket as he was planning on living in the United States permanently with his wife Ibado. He carried with him legal documents that he provided to the customs and border patrol agents at SeaTac International Airport. Isahaq was refused entrance to the United States at SeaTac Airport on Saturday, January 28, 2017.

7. The fact that Isahaq was forced to leave the United States by U.S. Customs and Border Enforcement without even an opportunity to talk to her caused Ibado great distress as she did not know what was happening. According to family members who spoke to Isahaq after he returned to Vienna, he himself was not sure whether he would be allowed to return to Vienna or would be deported back to Somalia, the country he had fled. He was also told when he was at the airport that he could not speak to his lawyer.

DECLARATION OF CAROL E. EDWARD
Case No. 2:17-cv-00135-JLR

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
206-957-8611

8. After learning that Isahaq had not been allowed to enter, I contacted CBP at the airport by telephone and was informed that they would not discuss the case with me, even though I was the attorney for Isahaq and further would not even discuss the current procedure in dealing with persons arriving from one of the seven countries that are part of President Trump's executive order.

Signed on __1/29/2017__ at __Concrete, Washington__
         (date)                  (Place of signing, city, state)

                         Signature

DECLARATION OF CAROL E. EDWARD
Case No. 2:17-cv-00135-JLR

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
206-957-8611

Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,

Plaintiffs-Petitioners,

v.

Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,

Defendants-Respondents.

Case No.: 2:17-cv-00135-JLR

**DECLARATION OF HESAM MOAZZAMI FARAHANI IN SUPPORT OF PLAINTIFFS**

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, Hesam Moazzami Farahani, declare under penalty of perjury as follows:

1.     My name is Hesam Moazzami Farahani and I was born in Iran. I am 32 years old and I work as a banker in Los Angeles, California. I've lived in the U.S. since 2010 and I am a naturalized citizen. I became a U.S. citizen in 2016 and it was a proud day for me. I love this country and becoming a citizen made me feel like I officially belonged here.

2.     My mother's name Simindokht Naghi Zadeh and she is sixty-five years old. My father's name is Mohammadhossin Moazzami Farahani and he is seventy-one years old. My parents are both citizens of Iran. Since I left Iran in 2010, I have only seen my parents twice. Not because I did not want to see them, but because our situation is complicated. It has been tough to be apart from my parents for so long.

3.     I have three sisters and I am the only son. My parents are elderly and sick. My father suffers from early stage Parkinson's disease and early onset Alzheimer's. My mother has high blood pressure. I am constantly worried about my parents because of their health. As the only son of the family, it is my responsibility to take care of my parents. I see it as my duty to help my family, particularly since I now have the resources to do so. I want my parents to live with me and one of my older sisters in Los Angeles so that we can take care of them as they age.

4.     I filed I-130 Petitions for my parents shortly after I became a U.S. citizen. I was really eager for my parents to come and reunite with me and my sister in Los Angeles. My sister lives with me and she is recovering from breast cancer and I wanted us all to be together.

5.     Once my parents' I-130 petitions were approved, we began the process of applying for their immigrant visas. In late November 2016, my parents travelled from Tehran, Iran to Ankara, Turkey for their interview with U.S. immigration officials. Their applications were approved and immigration issued their visas on December 1, 2016. I remember my parents called me after they learned that their visa was approved. They were so excited. My father is normally a very calm, neutral man, but I could hear the excitement in his voice. It sounded like 20 years were added to his life. I felt so relieved knowing that my parents would be able to come and live with me.

DECLARATION OF
HESAM MOAZZAMI FARAHANI
Case No. 2:17-cv-00135-JLR      - 1 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

6.     On December 20, 2016, we bought my parents' airline tickets to travel to the U.S. on March 15, 2017. We decided for them to travel in March so that I had time to try and buy a new house that had more space for my parents to live with me. Right now, I live in an apartment with my sister. We decided on the 15th of March so that we could celebrate Nowruz, the Persian New Year, together as a family. My parents also needed time to wind down their business little by little and to sell one of their homes.

7.     In January 2017, I started hearing that Trump might take action to stop people from traveling to the U.S. from Muslim countries. Friends were posting things on Facebook and I was hearing things on the news that made me concerned. I couldn't have imagined that my parents would have been impacted by any sort of ban. They had permission to come to the U.S. and I thought they would be fine. However, I did not want to take any chances. I decided that my parents should try and travel to the U.S. as soon as possible. On January 26, 2017, my parents bought new tickets to come to Los Angeles two days later. Unfortunately, while they were on their way to the U.S., everything changed.

8.     On January 28, 2017, at approximately 4:10 in the morning my parents boarded a plane in Tehran to begin their journey to Los Angeles. They had a connection in Abu Dhabi. My parents never made it on their flight to Los Angeles. They were scheduled to board Etihad Airways Flight 171, leaving for Los Angeles at 8:45 in the morning on January 28th. However, when they arrived in Abu Dhabi, officials at the airport told them that there was a new law and they could not come to the United States anymore.

9.     My parents were detained and questioned by U.S. immigration officials in Abu Dhabi. The officers spoke to my parents in a dialect they could not understand very well. The officials said that the American President had signed a law that meant they could not go to the United States. Officials told my parents to sign a piece of paper. The document was in English, which my parents do not speak. My parents did not understand what was happening to them and did what they were told because they trusted the officials. The officials told my parents that signing

DECLARATION OF
HESAM MOAZZAMI FARAHANI
Case No. 2:17-cv-00135-JLR    - 2 -    NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

the paper was simply proof they were turned away and that it would help them in the future to go to the United States.

10.    Later that day, my parents sent me a text message telling me that officials told them they could not come to the U.S. and that they had to go back to Iran. My parents told me they were waiting in Abu Dhabi for a flight to Tehran. They told me that immigration officials had them sign a paper and they sent a photo to my phone. I looked at the photo and saw an English language document titled "To Be Completed by Alien When Application for Admission Withdrawn." It was just a snapshot of a single page. I asked my parents why they signed the form and they told me they did not know what they were signing. They said they never wanted to withdraw their application and they wanted to come to America. My parents sounded very sad and worried. I was in shock. It was a very stressful moment for me. I had thought I was going to be reunited with my parents. Instead, I wasn't sure we would be together again.

11.    My parents were at the airport in Abu Dhabi for approximately 18 hours. During their detention, they were cold, uncomfortable, confused, and scared. My sister and I were panicking. We did not know what to do. Eventually, my parents boarded a plane and were sent back to Tehran. My father said it was the worst day of his life. It was also one of my worst days too. I felt pressure and pain in my chest. I was so upset and confused.

12.    My parents are still in Tehran. My whole life is on hold now. I can't sleep at night. I have had to take off work because I cannot focus. All I can think about is my family. My parents are worried. When I talk to them on the phone, all they want to know is what is going to happen next and when they can come to the United States. My mother told me she is having trouble sleeping.

13.    January 28, 2017 was supposed to be the start of a new, happy chapter for my family. We spent a lot of money, time, and effort into getting my family's papers in order so they could come here. I feel discriminated against and like a second class citizen because of where I was born. It hurts. All I want is for my parents to be here with me.

DECLARATION OF
HESAM MOAZZAMI FARAHANI
Case No. 2:17-cv-00135-JLR                    - 3 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, belief.

Executed on this 2nd day of February, 2017, in Los Angeles, California.

Hesam Moazzami Farahani

DECLARATION OF
HESAM MOAZZAMI FARAHANI
Case No. 2:17-cv-00135-JLR                    - 4 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Case 2:17-cv-00135-JLR   Document 37   Filed 02/07/17   Page 1 of 1

1

Honorable James L. Robart

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
9                  FOR THE WESTERN DISTRICT OF WASHINGTON
                                  AT SEATTLE
10

11  | Juweiya Abdiaziz ALI; A.F.A., a minor; Reema    Case No.: 2:17-cv-00135-JLR
    | Khaled DAHMAN; G.E., a minor; Ahmed
12  | Mohammed Ahmed ALI; E.A., a minor; on
    | behalf of themselves as individuals and on       **DECLARATION OF**
13  | behalf of others similarly situated,             **JAFFER AKHLAQ HUSSAIN**
                                                       **IN SUPPORT OF PLAINTIFFS**
14                      Plaintiffs-Petitioners,

15  | vs.

16
    | Donald TRUMP, President of the United States
17  | of America; U.S. DEPARTMENT OF STATE;
    | Tom SHANNON, Acting Secretary of State;
18  | U.S. DEPARTMENT OF HOMELAND
    | SECURITY; John F. KELLY, Secretary of
19  | Homeland Security; U.S. CITIZENSHIP AND
    | IMMIGRATION SERVICES; Lori
20  | SCIALABBA, Acting Director of USCIS;
    | OFFICE OF THE DIRECTOR OF NATIONAL
21  | INTELLIGENCE; Michael DEMPSEY, Acting
    | Director of National Intelligence,
22
23
                        Defendants-Respondents.
24

25

26

27

28



DECLARATION OF                                    NORTHWEST IMMIGRANT RIGHTS PROJECT
JAFFER A. HUSSAIN                                            615 Second Ave., Ste. 400
Case No. 2:17-cv-00135-JLR          - 1                        Seattle, WA 98104
                                                                 206-957-8611

I, Jaffer Akhlaq Hussain, declare under penalty of perjury as follows:

1. I am a United States lawful permanent resident. I live in Parlin, New Jersey. I am employed as a Software Developer specializing in the development and implementation of Microsoft ERP (Enterprise Resource Planning) software.

2. I was born in Karachi, Pakistan on November 3, 1980, and I am now 36 years of age. I came to the United States in August 1999 as an F-1 student to attend the University of Wisconsin. I was awarded the degree of Bachelor of Science in Electrical Engineering in December 2003. I continued my studies at Northeastern University in Boston, Massachusetts. I was awarded the degree of Master of Science in Engineering Management in January 2008. I was granted a change of status to H-1B on October 1, 2008. My previous employer Fullscope, Inc. sponsored me for permanent residence. My application was approved by USCIS, and I became a permanent resident of the United States on October 2, 2013.

3. I am married to Seyedehfatemeh Hamedani ("Fatemeh"), a citizen of Iran. Fatemeh holds the degree of Master of Science in Biotechnology. My family and her family are friends, and I have known Fatemeh from childhood. Beginning in 2012, we began to get to know each other better by chatting through Skype and Facebook. We saw each other in person at my sister's wedding in Pakistan. We realized we were strongly attracted to each other. We decided to marry, with the enthusiastic support of both of our families. Fatemeh and I were married in Karachi, Pakistan on January 8, 2015. Both Fatemeh and I are Muslims, and our marriage was celebrated in accord with Muslim traditions.

4. Immediately after our marriage I contacted my immigration lawyer in the United States, and filed an I-130 Immigrant Relative Petition on behalf of Fatemeh on April 15, 2015. The petition was approved on November 13, 2015, and forwarded to the National Visa Center. The petition could not be processed further at that time due to the limited number of visas available annually to the spouses of U.S. permanent residents. While we were waiting for visas to become available, Fatemeh continued to live in Iran. We visited as often as possible given the constraints

DECLARATION OF
JAFFER A. HUSSAIN
Case No. 2:17-cv-00135-JLR          - 2

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

of my employment in the United States. Fatemeh became pregnant with our child. On July 2, 2016 we were greatly blessed with the birth of our son Ermiya Syed. Our son is now seven months old. He lives with his mother in Iran.

5.      Around this same time, priority dates had advanced to the point where we were able to pay our visa application fees, file our DS-260 visa application, and submit our civil documents and Affidavit of Support to the National Visa Center. This required great effort on my part including a trip to Pakistan to obtain a passport for our son, as my son is a citizen of Pakistan under Pakistan law. Eventually, all of the necessary documents were obtained, and were submitted to the National Visa Center on January 30, 2017.

6.      On February 1, 2017 Fatemeh's priority date became current according to the February 2017 Visa Bulletin. This means Fatemeh and Ermiya are now eligible to obtain a visa appointment at the U.S. consulate in Abu Dhabi, obtain their immigrant visas, and proceed to the United States. However, due to the Executive Order issued on January 27, 2017, it is no longer possible for my wife and child to obtain a visa appointment or immigrant visas.

7.      I have been separated from my wife since our marriage, and I have been separated from our son since his birth. There is no practical place for us to live except the United States. It would be very difficult for me to live with my family in Iran, since I am not a citizen of Iran, and I could not own property or hold civil rights of any kind in Iran. There would be limited if any opportunity to pursue my profession in Iran. It would also be very difficult for our family to live in Pakistan. My family are Shia Muslims, which is a minority in Pakistan. My brother was a member of the National Assembly of Pakistan, and received threats during most of his term. These threats could well extend to myself and my family. Fatemeh wishes to pursue her education in bio-sciences in the United States. We both want our son to receive his education in the United States, and to become a United States citizen as we wish to do as well. All of our plans are now on hold indefinitely because of the travel ban.



DECLARATION OF
JAFFER A. HUSSAIN
Case No. 2:17-cv-00135-JLR                    - 3 -                    NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Case 2:17-cv-00135-JLR Document 17 Filed 02/06/17 Page 39 of 68

1

2      I declare under penalty of perjury under the laws of the United States that the foregoing is

3      true and correct to the best of my information, knowledge, and belief.

4

5          Executed on this 3rd day of February, 2017, in Parlin, New Jersey.

6

7      _____

8                          JAFFER A. HUSSAIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF
JAFFER A. HUSSAIN
Case No. 2:17-cv-00135-JLR          - 4                    NORTHWEST IMMIGRANT RIGHTS PROJECT
                                                           615 Second Ave., Ste. 400
                                                           Seattle, WA 98104
                                                           206-957-8611

Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,<br><br>        Plaintiffs-Petitioners,<br><br>vs.<br><br>Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,<br><br>        Defendants-Respondents. | Case No.: 2:17-cv-00135-JLR<br><br>**DECLARATION OF NIKOO NIKNEJAD IN SUPPORT OF PLAINTIFFS** |

DECLARATION OF
NIKOO NIKNEJAD
Case No. 2:17-cv-00135-JLR       - 0

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, Nikoo Niknejad, declare under penalty of perjury as follows:

1.      I am a lawful permanent resident. I live in Atlanta, Georgia. I am a homemaker.

2.      I came to the United States when I was 61 years old from Iran. I became a resident on September 25, 2009 through my brother's petition. That was the beginning of my journey to come to the US and eventually bring my children to the US so we could start a new life.

3.      My son, Amirbahador is a citizen of Iran. He is 34 years old and is currently in Iran.

4.      I filed an I-130 petition for him on April 21, 2010.  The petition was approved and I had to wait until his priority date became current. It was a long process to wait but it finally came in 2015.  I hired US immigration attorney, Carl Balediata, and he helped me through the process. We submitted all the documents and paid fees.  We followed all the rules.  My son received his US immigrant visa on December 19, 2016 in Abu Dhabi.

5.      I was so happy that I also traveled to be with him so I could bring him home with me to start his new life with me.  I am now currently in Iran with him. We booked a flight for January 30, 2017 with British Airways out of Tehran, Iran to return to the United States.  Upon check-in we were told that only I could board the flight but that my son could not because he did not have a green card.  We immediately called Carl Balediata who spoke on our behalf with British Airways to tell them my son's US Immigrant Visa was the same as a green card. British Airways said no and told us to go home.

6.      Carl Balediata was able to discuss our case in more detail with a British Airways regional supervisor. It was arranged for us to try to depart again out of Tehran, Iran on February 2, 2017. This time we were told that me and my son had to be given an okay by US Customs and Border Protection from New York, USA.  We arrived at the airport at 6:30am and waited 1 hr. We were told that we both could not board the plane. The British Airways agent showed us an email from US Customs and Border Protection that said I could not board the flight and that my son was not "cleared" and that he had to go back to the US Embassy in Abu Dhabi. That is all they told us.

DECLARATION OF
NIKOO NIKNEJAD
Case No. 2:17-cv-00135-JLR              - 1

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

7.      I was again devastated. I feel helpless. Why is the country I love doing this to my son. Carl Balediata is now working hard to try and bring my son home. I do not want to go home without my son. I need him.  I have already been separated from him for so long.

8.      I am old and I want my son to be with me. I want him to start a new life in the United States, the land of opportunity.

9.      It has been a life long dream for me for my son to come and be with me in the United States.  I also filed an I-130 petition for my daughter and we were in the process of starting her case too but now I have also lost hope with her case as well.

10.     I just want my family to reunite and be with me in the United States. I always wanted what was best for my son and my daughter.  Now I cannot see how we can get through this. I am heartbroken and cannot understand why this country I love is doing this to me and my family.


        I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, belief.


        Executed on this 2nd  day of February, 2017, in Tehran, Iran.


                        _____
                        Nikoo Niknejad


DECLARATION OF
NIKOO NIKNEJAD
Case No. 2:17-cv-00135-JLR                  - 2

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated, | Case No.: 2:17-cv-00135-JLR |
|---|---|
| Plaintiffs-Petitioners, | **DECLARATION OF MOHAMED BARRE OMAR** **IN SUPPORT OF PLAINTIFFS** |
| v. | |
| Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence, | |
| Defendants-Respondents. | |

DECLARATION OF
MOHAMED BARRE OMAR
Case No. 2:17-cv-00135-JLR                  - 0

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, MOHAMED BARRE OMAR, declare under penalty of perjury as follows:

1.  I am a United States citizen. I live in Tukwila, Washington. I own a small grocery store in Seattle, Washington, and I am an instructional assistant for Seattle Public Schools.

2.  I was born in Somalia. I came to the United States as a refugee when I was 61 years old from Kenya. I became a U.S. Citizen on March 13, 2012 in Seattle, Washington.

3.  My biological son is Ahmed Mohamed Barre. He was born on October 5, 1992 in Mombasa, Kenya. He is a citizen of Somalia by birth, because my wife and I were refugees. He and his mother moved to Ethiopia shortly after he was born. His mother died in Kenya on April 20, 2012. He grew up in Addis Ababa, Ethiopia and has not left it since moving there. He has never physically been in Somalia.

4.  I last saw Ahmed in 2012, before his mother died. She had been in Kenya, so I visited her and then went to Ethiopia to visit him. After visiting him, I decided to apply to bring him to the United States to live with me. He is my only child that does not live in the United States.

5.  I filed my Form I-130, Petition for Alien Relative, for him on October 25, 2012. The preference classification for the case is 201 B INA Minor Child of USC. The petition was approved and transferred to the National Visa Center in 2015. My son was interviewed for an immigrant visa at the U.S. Embassy in Addis Ababa, Ethiopia on January 23, 2017 at 07:45 AM. His case was approved and his immigrant visa was issued on January 25, 2017.

6.  Upon receipt of his immigrant visa, we had planned to have him pack up and then purchase a plane ticket to the U.S. The executive order was issued before he could buy a ticket. He has attempted to buy a ticket, but no airline will sell one to him because they do not want to take the risk that the U.S. will not allow him to immigrate despite the issuance of a valid immigrant visa.

7.  My son has never lived in Somalia, has no experience with his country of citizenship, and does not know how to navigate the risks of living there. It is unsafe and impossible for him to live in Somalia.

DECLARATION OF
MOHAMED BARRE OMAR
Case No. 2:17-cv-00135-JLR                   - 1

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

8.    My son cannot return to Kenya. The Kenyan government is actively refusing entry for Somalian citizens and is refusing to take additional refugees. He no longer holds refugee status in Kenya.

9.    I fear for my son's safety in Ethiopia due to the state of emergency related to protests and violence in Addis Ababa and throughout Oromia. My son has little opportunity in Ethiopia, because he is not a citizen there, and is present only at the permission of the government.

10.    I fear that my son's immigrant visa will expire before he the travel ban in the executive order is lifted for citizens of Somalia. I would then lose his priority date of October 23, 2012, which allows him to be the immediate relative, minor child of a U.S. Citizen for visa preference purposes under the Child Status Protection Act. I would be required to file a new petition for him as the adult child of a U.S. Citizen, family-sponsored first preference category, which has a current priority date of January 1, 2011. It would most likely take over six years before he would be able to obtain a new immigrant visa to the United States, which would mean he would be over the age of 30 by the time he arrived. That delay would directly interfere with his ability to attend a school in the United States and build a career. It would have a permanent, negative impact on his earning abilities and his ability to marry and grow a family. It is not reasonable nor rational to prevent my son, who is a Somalian citizen only as a result of his being born to refugee parents in Kenya, from coming to the U.S.

11.    It is too expensive for me to travel to Ethiopia regularly. It has been nearly five years since the last time I visited Ethiopia. My son lives over 8,000 miles from me. His time zone is 11 hours ahead of mine. When I go to bed, he is waking up; when he is going to bed, I am waking up. It is difficult for us to talk on the phone because of the time difference, but we try to make time for each other every week. I have to send him money to support in Ethiopia, because he does not have a job. It is an enormous financial and emotional hardship to my son, myself, and my family for him to live in Ethiopia while everyone else lives in the United States.

DECLARATION OF
MOHAMED BARRE OMAR
Case No. 2:17-cv-00135-JLR

- 2 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

12. I want to bring my whole family together by having all of us live in the United States. My son is the only person left outside of the United States. I want him to be able to go to a good university, to have a career, and to be able to live the American Dream. Moments before January 27, 2017, I believed that dream was a reality and that we would be reunited. Now, because of the executive order, I no longer know if that dream is possible.

13. Please reunite my family by allowing my son to come to the United States as quickly as possible.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, belief.

Executed on this 1st day of February, 2017, in Seattle, Washington.

Mohamed Barre Omar
14839 Military Rd S, #108
Tukwila, WA 98168
(206) 566-4338

DECLARATION OF
MOHAMED BARRE OMAR
Case No. 2:17-cv-00135-JLR

- 3

Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,<br><br>            Defendants. | Case No.: 2:17-cv-00135-JLR<br><br>**DECLARATION OF AZIN SAFARI IN SUPPORT OF PLAINTIFFS** |

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, Azin SAFARI, declare under penalty of perjury as follows:

1.      I am a United States citizen and I moved to the United States on July 3, 2011 on an immigrant visa through marriage when I was 23 years old from Iran. I became a U.S. citizen on May 28, 2015. I currently live in Westminster, Colorado and work as a programmer for a marketing company.

2.      My parents live in Iran and miss us terribly every day. They once went through getting a tourism visa and came to visit us in 2013. Due to the fact that there is no U.S. embassy in Iran, it cost my parents thousands of dollars to travel to Austria, stay in a hotel, and go for their interview. After 18 months of waiting for the application processing, they finally got their visitor's visa to come to the U.S. and visit us for 3 months.

3.      When they were returning back to Iran, my father humbly told me that he really could not afford these kinds of pressures at this age financially and emotionally. Because the whole process of traveling would be so exhausting and frustrating for them to go through again, my father was hesitant to visit again.

4.      After my naturalization on May 28, 2015, I decided to immediately apply for my parents' green cards so they could travel one last time and they could remain in the U.S. with me. I sent my petition to USCIS in July, 2015.

5.      We received their welcome letters from NVC in January 2016.  This time, my mother was referred to the Emirates embassy and my father was referred to Turkey embassy for a consular interview. Since they didn't want to travel separately, I had to request for both to be interviewed in one country/embassy. It took another 5 months for the National Visa Center to change the location and update my mother's location of interview to Ankara, Turkey.

6.      My parents were scheduled for a consular interview in Ankara, Turkey on September 30, 2016. My mother got her visa immediately after the interview. However, they requested for 2 supporting documents from my father to issue his visa which is still under processing.

DECLARATION OF
AZIN SAFARI
Case No. 2:17-cv-00135-JLR                - 1 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

7.      Although my mother had a valid visa issued on October 6, 2016, she bought her ticket for March 7, 2017 with the hope that my father can get his visa during this time and join her. Her immigrant visa expiration date was noted as March 28, 2017 so we were certain she had plenty of time. She was so excited every single day to finally see us.

8.      A week after their interview, I realized I'm pregnant. I decided to surprise my parents when they arrive here so I kept it a secret.  We were certain that at least my mother will be with us to help us when the baby arrives. Hence, we put all our life plans based on her arrival by March 2017.

9.      On Friday, January 29, 2017, we heard the cruel news. My mother's visa was revoked. After 2 years of waiting and fighting to make everything work, with a baby on the way, it ruined our entire life plan. After 90 days of suspension, her visa will expire and all the hard work will turn into ashes.

10.     After a few shocking hours, I started calling Custom and border Protection and Denver international airport to see if the order is effective yet or if we had some time left. I was willingly ready to do whatever I could to bring her here before the executive order became effective.

11.     CBP informed that they don't have any order yet and Denver Airport informed us that they haven't heard the news yet and they will process all valid visas since they currently are not advised about any order. Also Lufthansa airline cooperated and changed my mother's ticket to Saturday 1/30. She packed a baggage and got ready to go to the airport in 2 hours.

12.     But at the airport, they informed her that her ticket is voided by Lufthansa airline and all flights from Iran to the U.S. are blocked by the airlines because *they JUST received the order.*

13.     My parents still don't know that they have a grandchild on the way. The great news will be a sad one for them now since they know they are not able to see the baby anytime soon.

14.     All the joy in our lives is gone by an immature decision and a rolling pen on a paper.

I declare under penalty of perjury under the laws of the United States that the foregoing is

DECLARATION OF
AZIN SAFARI
Case No. 2:17-cv-00135-JLR                    - 2 -

true and correct to the best of my information, knowledge, and belief.

Executed on this 2nd day of February, 2017, in Westminster, Colorado.

Azin Safari

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Honorable James L. Robart

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,<br><br>        Defendants. | Case No.: 2:17-cv-00135-JLR<br><br>**DECLARATION OF GREGORY HOWARD SISKIND IN SUPPORT OF PLAINTIFFS** |

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, GREGORY HOWARD SISKIND, declare under penalty of perjury as follows:

1.  I am a US immigration attorney based in Memphis, Tennessee. I am licensed in the State of Tennessee.

2.  I am a co-author of the *J-1 Visa Guidebook*, published annually by Lexis-Nexis and the author of the *Physician Immigration Handbook*, published by Alan House.

3.  I chair the IMG Taskforce, the nation's physician immigration bar organization and I serve on the Board of Governors of the American Immigration Lawyers Association.

4.  I represent many health care institutions that will be severely affected by the travel ban signed by President Trump in his January 27, 2017 Executive Order. One client is a large hospital system that has several dozen hospitals across much of the United States. Many of those hospitals are in small and rural communities that are designated by the US Department of Health and Human Services as Medically Underserved Areas (MUAs) and Health Professional Shortage Areas (HPSAs).

5.  Physicians who are graduates of foreign medical schools are typically referred to as International Medical Graduates (IMGs). 25% of the doctors in the United States were born outside the US. And more than 25% of the doctors who train at teaching hospitals in the United States are foreign-born. More than 80% of the doctors who train in American teaching hospitals are on J-1 visas. To remain in the United States, J-1 doctors must get a waiver of the requirement in Section 212(e) of the Immigration and Nationality Act that the doctor return to his or her home country for two years. The most common way a doctor can get a waiver is if the doctor agrees to work for three or more years in an MUA or HPSA. MUAs and HPSAs are typically in rural areas or inner cities. After three years, the doctor becomes eligible to become a permanent resident. If the doctor agrees to work two more years in a HPSA or MUA, the doctor can apply for permanent residency through a category called a Physician National Interest Waiver (PNIW).

DECLARATION OF
GREGORY HOWARD SISKIND
Case No. 2:17-cv-00135-JLR                    - 1

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

6. The United States is currently facing a dire physician shortage. According to the Association of American Medical Colleges (AAMC), the nation faces a shortage of between 61,700 and 94,700 physicians over the next decade.

7. Physicians from Iraq, Iran, Libya, Somalia, Sudan, Syria and Yemen constitute a significant portion of the doctors working in the United States. There are currently about than 8,000 doctors in the United States who are from Iran and Syria alone. ECFMG, the organization designated by the State Department to screen IMGs to determine eligibility to train in the United States, has indicated that in 2015, Iran was the country with the fourth highest number of ECFMG certificates issued and Syria was the tenth.

8. My hospital system client recruits several dozen IMGs each year to work at its hospitals across the country. Many of those doctors are from countries named in the January 27th order. Because of the severe physician shortage in the country, the client is greatly concerned that the travel ban will make it difficult to recruit doctors. That could have a highly negative effect on my clients' hospitals (and its patients) as well as hospitals across the country.

9. Furthermore, the ban will impact its ability to retain doctors already working at its hospitals. For example, because it can take more than five years for a doctor to get permanent residency and another five years for the doctor to become a citizen, physicians from the affected countries could face ten years without being able to leave the United States. Because family members outside the United States face a ban on traveling to the United States that may be indefinite, some of these doctors are contemplating not being able to see family members or visit their homelands for more than a decade.

10. We are also concerned that the travel ban could have a broader impact on the recruiting of IMGs that extends beyond the seven countries on the ban list. According to Atul Grover the executive vice president of AAMC, "The majority of our foreign doctors

DECLARATION OF
GREGORY HOWARD SISKIND
Case No. 2:17-cv-00135-JLR     - 2

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

come from India and Pakistan, and while they're not on the list I think when the environment feels this uncertain and this inhospitable, they'll go to Canada and the U.K." India and Pakistan are the number one and two countries for receiving ECFMG certifications.

11. I also represent one of the world's most respected cancer research hospitals. The hospital employs doctors from the seven countries on the ban list and they will be adversely affected. The hospital's research scientists are frequently applicants for EB-1 immigrant visas which are based on demonstrating extraordinary ability in science or being an outstanding researcher or professor. The ability to qualify for permanent residence in the EB-1 category requires medical researchers to demonstrate that they have reached the pinnacle of their profession. To achieve this, the research scientist must publish in the most prestigious journals and present at major medical conferences. Many of those conferences are outside the United States and scientists affected by the travel ban will not be able to attend. Furthermore, many are calling for boycotting conferences in the United States and many of the most prestigious conferences may move to other countries.

12. The research hospital may also find it is unable to recruit top scientists from other countries who decide to bypass working in the United States out of fear or in protest over a policy they conclude is bigoted. Academic institutions in the US are already reporting losing visiting professors and researchers as a result of the January 27th order.

13. I also represent many individual physicians who plan on bringing elderly parents to the United States once they become US citizens. One physician who is a naturalized citizen originally from Iran experienced his parents' immigrant visa interview being cancelled this past week and is distraught over the prospect that they will never be able to live with his family in the United States. Because it can take so many years for physicians to be able to get to the point of becoming US citizens and being able to sponsor parents for permanent residency, many are quite elderly and often infirm by the time they can come

DECLARATION OF
GREGORY HOWARD SISKIND
Case No. 2:17-cv-00135-JLR                           - 3 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

to the United States. In some cases, the American child is the only one able to care for the parent.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 6th day of February, 2017, in Memphis, Tennessee.

Gregory Howard Siskind
1028 Oakhaven Road
Memphis, TN 38119
Telephone: 901-682-6455Me

DECLARATION OF
GREGORY HOWARD SISKIND
Case No. 2:17-cv-00135-JLR                    - 4

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Honorable James L. Robart

1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE
10
Juweiya Abdiaziz ALI; A.F.A., a minor; Reema      Case No.: 2:17-cv-00135-JLR
11
Khaled DAHMAN; G.E., a minor; Ahmed
Mohammed Ahmed ALI; E.A., a minor; on
12
behalf of themselves as individuals and on        DECLARATION OF SOHAIL SOBHANI
behalf of others similarly situated,              IN SUPPORT OF PLAINTIFFS
13
14                Plaintiffs,
15    v.
16
Donald TRUMP, President of the United States
17
of America; U.S. DEPARTMENT OF STATE;
Tom SHANNON, Acting Secretary of State;
18
U.S. DEPARTMENT OF HOMELAND
19
SECURITY; John F. Kelly, Secretary of
Homeland Security; U.S. CITIZENSHIP AND
20
IMMIGRATION SERVICES; Lori
21
SCIALABBA, Acting Director of USCIS;
OFFICE OF THE DIRECTOR OF NATIONAL
22
INTELLIGENCE; Michael DEMPSEY, Acting
Director of National Intelligence,
23
24                Defendants.
25
26
27
28

DECLARATION OF                                    NORTHWEST IMMIGRANT RIGHTS PROJECT
SOHAIL SOBHANI                                                    615 Second Ave., Ste. 400
Case No. 2:17-cv-00135-JLR              - 0                            Seattle, WA 98104
                                                                        206-957-8611

I, SOHAIL SOBHANI, declare under penalty of perjury as follows:

1.    I am a United States citizen. I live in Conshohocken, Pennsylvania. I am a Customer Sales Executive with The Hershey Company for the Rite Aid business.

2.    I was born in the United States on April 2, 1980 in Lebanon, Pennsylvania.

3.    I married Solmaz Behzadpour on January 7, 2016 in Tehran, Iran. Solmaz is a national of the Islamic Republic of Iran. Solmaz and I were first introduced in April of 2015 through my cousin's husband. We started a long distance relationship and planned a trip to London to get to know each other, in August of 2015.  We instantly feel deeply in love.  Her living in Tehran, and me living in Pennsylvania was tough.  We made a second trip to meet in London in August October 2015. After that we saw each other in Iran in December of 2015.  In January 2016 I asked Solmaz to be my wife.  We were married in January 2016 in Iran.

4.    On January 29, 2016 I filed an I-130 family based petition for my spouse to join me in the United States as a legal permanent resident.  That petition was approved on April 8, 2016 and we started the consular process through the National Visa Center.

5.    In the meantime, I was travelling back in forth from Pennsylvania to Tehran to visit my wife. This was not only a financial burden on our family, but it was a huge trip to keep making. My work life and personal life were very difficult by having my wife separated from me. Solmaz was able to obtain a visa to the United Kingdom and we met London a few times, to ease my burden of traveling all the way to Tehran.  It has been a very difficult ordeal to have to space out time to see each other in this fashion, as usually we go many months without seeing each other.

6.    In December 29th, 2016, we received confirmation from the National Visa Center that our consular processing was complete, and that we were scheduled to be interviewed in the U.S. Embassy in Dubai, United Arab Emirates for the final step of the green card process.

7.    After a year of waiting to begin our lives together, getting the email from the NVC in late December that her interview was scheduled for February 1st 2017 was one of the greatest days in

DECLARATION OF
SOHAIL SOBHANI
Case No. 2:17-cv-00135-JLR

- 1 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

our lives. The last two weeks of January 2017 were very emotional for Solmaz. Solmaz said her finale goodbyes to all of her friends and family, and packed up all of her remaining belongings that I had not already brought back to the USA with me. Solmaz even packed ingredients for the first Iranian meal she was going to cook us when we got the United States, as well as items for our first haft-seen or table for Persian New Year that we would celebrate in the States in March 2017. Our photographer also prepared our wedding pictures in an expedited fashion, so Solmaz could have them to bring to the United States.

8.      Exactly one year after the I-130 petition was filed, on January 28, 2017 I was waiting at baggage claim at the Dubai airport waiting for her luggage, while she was in line at Passport check. Tragically, at that moment, we received an email from the National Visa Center stating that her interview was cancelled until further notice, and apologies for any inconvenience. We were devastated. Not only had we spent thousands of dollars on this trip, we were finally at the last step of our arduous process. We were in grasp of our dream, of finally being with each other, and starting our life together as husband and wife in the United States.

9.      I spent the next few hours contacting the National Visa Center, where they simple stated they could not provide any information and instructed me to not call back. I felt completely helpless with no recourse for relief. I had arranged to extend our trip in the United Arab Emirates for another week so we could sort things out and obtain more information somehow. However, as the Executive Order panned out, it was clear that our situation was not going to change. Realizing that my efforts were fruitless, I arranged to file back to Pennsylvania without my wife. I bought a separate flight for Solmaz to return to London temporarily.

10.     Unfortunately, despite the temporary halt of the Trump administration's travel ban from Iran, my wife's interview has not been rescheduled. The National Visa Center has indicated to us that it does not plan on reschedule the interview until the ban is lifted. I have an approved I-130 petition and a spouse stuck outside of the USA due to the Trump administration's travel ban on Iran. I'm not sure what the outcome of our case will be.

DECLARATION OF
SOHAIL SOBHANI
Case No. 2:17-cv-00135-JLR                   - 2 -

11.     I do know that I would of never gone through this process had I known we had no right to an interview, and that my wife would not be allowed to migrate to the United States.  Now, my life is on hold.  My wife is in limbo living out of suitcases in London, and we have to hit pause on moving forward with our life when we were moving full force ahead based on the same immigration path that others have a right to, all simply because my wife is an Iranian Muslim.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 6th day of February, 2017, in Conshohocken, PA.

SOHAIL SOBHANI

DECLARATION OF
SOHAIL SOBHANI
Case No. 2:17-cv-00135-JLR                                    - 3 -

Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,<br><br>　　　Plaintiffs-Petitioners,<br><br>v.<br><br>Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,<br><br>　　　Defendants-Respondents. | Case No.: 2:17-cv-00135-JLR<br><br>**DECLARATION OF GHASSAN TAHHAN IN SUPPORT OF PLAINTIFFS** |

DECLARATION OF
GHASSAN TAHHAN
Case No. 2:17-cv-00135-JLR　　　- 0

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, GHASSAN TAHHAN, declare under penalty of perjury as follows:

1.    I am a citizen of the United States. I live in Frisco, Texas. I am a software engineer.

2.    I came to the United States in 2006 when I was about 22 years old from Syria. I became a citizen on August 18, 2015.

3.    My parents are citizens of Syria and they currently live in Damascus, Syria

4.    As a U.S. citizen, I applied for my parents to become Permanent Lawful Residents. They already got approved and they already received their immigrant visas.  My father's immigrant visa was issued on January 19, 2017, and my mother's immigrant visas was issued on January 23, 2017.

5.    My parents already purchased their plane tickets to the United States but they didn't start their travel yet. My parents live in a war-torn country. Nothing is safe over there and no one knows what might happen the next day. My father is 76 years old, and my mother is 70 years old. All of their children live outside Syria. It's very important for them to have a safe place where they can rest and feel safe.

6.    We lost about $500.00 so far for cancelling the tickets. It has been almost 1 year since the last time I've seen my parents.

7.    My parents are old people, they need all the care and rest they can get here in the United States. As I mentioned before, none of their children live in Syria anymore, which is why it becomes very important for them to be able to come to the United States for safety, medical care, and so much more.  In Syria it is very hard nowadays to get anything – even clean drinking water. With all of what's going on right now, I am afraid that this Executive Order will prevent me from seeing my parents for the rest of my life.

DECLARATION OF
GHASSAN TAHHAN
Case No. 2:17-cv-00135-JLR                  - 1

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 4th day of February, 2017, in Frisco, TX.

_____

GHASSAN TAHHAN

DECLARATION OF
GHASSAN TAHHAN
Case No. 2:17-cv-00135-JLR          - 2

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

1

Honorable James L. Robart

2

3

4

5

6

7

8

9           UNITED STATES DISTRICT COURT
10      FOR THE WESTERN DISTRICT OF WASHINGTON
                    AT SEATTLE

11   Juweiya Abdiaziz ALI; A.F.A., a minor; Reema      Case No.: 2:17-cv-00135-JLR
12   Khaled DAHMAN; G.E., a minor; Ahmed
     Mohammed Ahmed ALI; E.A., a minor; on
13   behalf of themselves as individuals and on        DECLARATION OF NITA NICOLE UPADHYE
     behalf of others similarly situated,              IN SUPPORT OF PLAINTIFFS
14

15              Plaintiffs-Petitioners,

16   vs.

17
     Donald TRUMP, President of the United States
18   of America; U.S. DEPARTMENT OF STATE; Tom
     SHANNON, Acting Secretary of State; U.S.
19   DEPARTMENT OF HOMELAND SECURITY; John
     F. KELLY, Secretary of Homeland Security; U.S.
20   CITIZENSHIP AND IMMIGRATION SERVICES; Lori
     SCIALABBA, Acting Director of USCIS; OFFICE OF
21   THE DIRECTOR OF NATIONAL INTELLIGENCE;
     Michael DEMPSEY, Acting Director of National
22   Intelligence,
23

24              Defendants-Respondents.

25

26

27

28

     DECLARATION OF                               NORTHWEST IMMIGRANT RIGHTS PROJECT
     NITA NICOLE UPADHYE, ESQ                                615 Second Ave., Ste. 400
     Case No. 2:17-cv-00135-JLR          - 0                    Seattle, WA 98104
                                                                  206-957-8611

I, Nita Nicole Upadhye, declare under penalty of perjury as follows:

1.     I am a US immigration attorney based in London, United Kingdom. I am licensed in the State of Arizona.

2.     My client is a citizen of Iran. He is currently located in London. He is employed as a professional architect for a global architecture firm with approximately 900 employees.

3.     He currently holds a valid visa (Tier 2 category) to reside and work in the United Kingdom. The visa is valid for approximately 6 more years; his employment is strictly limited to working for this employer.

4.     His I-140 immigrant visa petition in the EB-1 (Extraordinary Ability) category was submitted to USCIS in 2015. It took approximately seven months for approval. Thereafter he received notification from National Visa Center (NVC) to continue the process to the next stage. The NVC requested that fees of $455 and civil documents be sent by email to NVC within one year of receipt.

5.     At the time of receiving the notification from the National Visa Center he was also granted L-1 visa status at the US Embassy in London for the purpose of working in the New York office of his UK employer. The L-1 visa (Blanket) was granted two days prior to the signing of the Executive Order.

6.     He appeared for his visa appointment at the US Embassy in London in December 2016, but received his passport and approved visa two days prior to the Executive Order. He therefore was required to wait longer than the standard processing time of one week for the return of his passport.

7.     After being told by the Consular Officer that his visa would be granted, he informed his landlord that he would not need to renew his lease. The Executive Order left him concerned about his accommodation arrangements during this time and he is now staying with friends.

8.     The employer wished to send my client to the United States to oversee an important project but was forced to find someone else within the company to replace my client. My client

DECLARATION OF
NITA NICOLE UPADHYE, ESQ
Case No. 2:17-cv-00135-JLR               - 1

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

has specialized knowledge in customized programs and applications used by his employer that not all employees are knowledgeable of. He has been working for the company for almost 4.5 years and has acquired advanced level expertise in the company's customized digital presentation programs. My client estimates that it would take a minimum of one year to train a local worker to operate at his level. Without my client in the US, the company potentially risks losing millions of dollars in contracts with US clients.

9.      My client previously worked in the company's New York office for one year under the Optional Practical Training scheme, following successful completion of a Bachelor's Degree in the United States.

10.      If my client was required to go back to Iran he would have to undertake mandatory military service for two years and would not be able to leave the Iran.

11.      My client has expressed that the United States was always seen as a land of opportunity but now he is more afraid of how he will be treated and what other restrictions there may be in the future.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, belief.

Executed on this 5th day of February, 2017, in London, United Kingdom.

Nita Nicole Upadhye
14 Gray's Inn Road
London WC1X8HN
Tel (0) 208 004 3492

DECLARATION OF
NITA NICOLE UPADHYE, ESQ
Case No. 2:17-cv-00135-JLR                    - 2

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,

        Plaintiffs-Petitioners,

v.

Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,

        Defendants-Respondents.

Case No.: 2:17-cv-00135-JLR

**DECLARATION OF DENIZ UYSAL-FERRE IN SUPPORT OF PLAINTIFFS**

DECLARATION OF
DENIZ UYSAL-FERRE
Case No. 2:17-cv-00135-JLR      - 0

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

I, Deniz Uysal- Ferré, declare under penalty of perjury as follows:

1.      I am over the age of eighteen, am competent to testify to the matters below, and make this declaration based on personal knowledge.

2.      I work as a legal advocate in the Family Services Unit at Northwest Immigrant Rights Project ("NWIRP") in Seattle, WA.

3.      I have been working with plaintiff Juweiya Abdiaziz Ali ("Ms. Ali") on her family petition for her son A.F.A., since August 2016.

4.      Ms. Ali was born in Somalia. She derived U.S. citizenship from her mother on August 31, 2010.

5.      She is a stay-at-home mother. She lives with her husband (A.F.A.'s father) and their 2-year-old daughter in Seattle, Washington.

6.      Ms. Ali's son A.F.A. was born in Galkayo, Somalia on February 4, 2010. He is a Somali citizen. He currently lives in Bosaso, Somalia with Ms. Ali's mother-in-law.

7.      NWIRP has assisted Ms. Ali with the family petition process for her son. We filed her Form I-130, Petition for Family Relative, on August 12, 2016 with United States Immigration and Citizenship Services ("USCIS").

8.      USCIS approved Ms. Ali's Form I-130 on December 21, 2016.

9.      On January 12, 2017, Ms. Ali received fee invoices from the National Visa Center ("NVC") for processing of the Immigrant Visa Application and Affidavit of Support. Payment of these fees was needed in order to continue with the consular process.

10.     On January 13, 2017, Ms. Ali paid both fees—totaling $445—online.

11.     On January 20, 2017, we submitted Ms. Ali's Form DS-260, Immigrant Visa Electronic Application, online. The required civil and financial documents were also mailed to NVC as part of the consular process. Ms. Ali and her son A.F.A. are now waiting for the immigrant visa interview to be scheduled at the U.S. Consulate in Nairobi, Kenya. That is the last step in the process before an immigrant visa can be issued for the child.

DECLARATION OF
DENIZ UYSAL-FERRE
Case No. 2:17-cv-00135-JLR                - 1

Northwest Immigrant Rights Project
615 Second Ave., Ste. 400
Seattle, WA 98104
206-957-8611

12.     Just days before the Executive Order issued on January 27, 2017, Ms. Ali travelled to be with her son to ensure everything needed for his immigrant visa process was well taken care of.

13.     When we communicated with Ms. Ali after the announcement of the Executive Order, Ms. Ali stated that she is very saddened and hurt by the actions of the President and that this is affecting her emotionally. She said she is heartbroken by the fact that she had to explain to her 7-year-old son that she might not be coming back to bring him to the United States as soon as they imagined. Ms. Ali asked me, "How do you tell a 7-year-old little boy that, 'no, you cannot come to live with your father, little sister and mother because you have a passport of a certain country?" Ms. Ali told me during one of our meetings that her son was looking forward to meeting his little sister whom he has not yet met. Ms. Ali told me her son asked Ms. Ali, "Why can my little sister live with and daddy but not I?"

14.     I have worked with Ms. Ali on this case very closely and have witnessed her excitement knowing she would soon be reunited with her son and have her family together after all these years. Since the issuance of the Executive Order, Ms. Ali has expressed sadness and anxiety regarding these unprecedented changes.

        I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

        Executed on this 4th day of February, 2017, in Seattle, Washington.

                                        Deniz Uysal Ferré
                                        Legal Advocate, Family Services Unit
                                        Northwest Immigrant Rights Project
                                        615 Second Avenue, Suite 400
                                        Seattle, WA 98104
                                        (206) 957-8627

DECLARATION OF
DENIZ UYSAL-FERRE
Case No. 2:17-cv-00135-JLR          - 2